UNITED STATES v. PURDY et al.

*(District Court, S. D. Ohio, W. D.  April 25, 1889.)*

1. PENSIONS—DEPENDENT RELATIVES.
    Under Rev. St. U. S. § 4707, providing that if a soldier has died entitled to a pension, and leaves neither widow nor minor children, his mother, father, or orphan brothers and sisters, if dependent on him at the time of his death, shall be entitled to the pension, a mother is dependent upon her son when she requires for her support the use of a farm in which he has an interest as heir.

2. SAME.
    The mother would be entitled to support according to the style in which she had been accustomed to live.

3. SAME.
    Though the mother, a widow, had some money of her own invested, she was not bound to use the capital for her support. She could be dependent upon the son, within the meaning of the statute, and still keep her money at interest, using the income for her support as far as it would go.

4. SAME—CONTRACT FOR SUPPORT.

Under the provision of section 4707, that the pension allowed to any person on account of dependence shall "not be paid for any period during which it shall not be necessary as a means of adequate subsistence," if the mother has made a contract with a third person for her support during life she is not entitled to any pension from the date of such contract.

5. SAME—APPLICATION FOR PENSION—FALSE STATEMENTS.

The mere fact that there were false statements in an application for a pension under section 4707, even if they were intentionally false, is not sufficient to invalidate the pension. It must appear further that they were material and necessary in order to procure the pension.

6. SAME—OPINIONS OF SECRETARY OF INTERIOR.

The opinions of the secretary of the interior as to the construction of the pension laws are not authoritative or binding upon the courts.

At Law. Action to recover back pension money.

*Harlan Cleveland,* Asst. U. S. Dist. Atty., for plaintiff.

*Newby & Morrow,* for defendants.

SAGE, J., *(orally charging jury.)* The government sues to recover from Margaret Purdy and her son Robert J. Purdy, the sum of $2,546.86, which, as is set forth in the petition, is the amount of the pension granted or paid to Margaret Purdy on the 25th day of April, 1888, on account of the death, from injuries received in the service, of her son William T. Purdy, on the 12th of May 1862. The pension was granted under section 4707, Rev. St. U. S., which provides, in substance, that if a soldier has died of a disability contracted in service, under such circumstances as would have entitled him to a pension, and he leaves neither widow nor minor children, certain relatives, if any survive, who were dependent, in whole or in part, on such soldier at the time of his decease, become entitled to the pension. The mother is first entitled, the father second, the orphan brothers and sisters, third. Now, this statute provides that there must have been dependence upon the deceased soldier for support, in whole or in part, at the time of his death, and that the mother shall be presumed to have been dependent upon her son if, at the date of his death she had no adequate means of support other than the ordinary proceeds of her own manual labor and the contributions of her son, or of any other persons not legally bound to aid in her support, and if by actual contributions, or in any other way, the son had recognized his obligation to aid in the support of his mother, or was by law bound to such support.

The first question in this case therefore is: Was Margaret Purdy dependent for her support, in whole or in part, upon William T. Purdy at the date of his death? In other words, had she adequate means of support other than the ordinary proceeds of her own manual labor and his contributions, or the contributions of other persons not legally bound to aid in her support? It is for you to determine the facts bearing on this question. It appears from the evidence so far as the court was able to hear it, that in 1860, I think,—at any rate, at a date prior to the enlistment of William T. Purdy in the army,—Margaret Purdy's husband died intestate; that in the two farms—one of 78 acres, and the other of

about 24 acres—there were about 35 acres of cleared land; that after the death of the husband and father the widow continued to live on the place; (she was entitled to her home there for one year under the law;) but that she continued to live there, and her sons were with her, living upon the place, improving and working it. Whether the deceased was with her most of the time up to the date of his enlistment depends upon the testimony, but the whole drift of the testimony is that the widow occupied the farm, supervising the management of it, the cultivation of it, and that the work was done by her sons, and she got her living in that way. Now, upon the death of the father, the title to this land vested instantly in the children, subject to the dower estate of the widow, which would be one-third of the rents and profits during her life, and it would be a contribution to her support if the children permitted her to have the use of the entire farm. And if that use of the farm was necessary to her support, then she would be, at least in part, dependent upon that, and that dependence would be recognized by permitting her to occupy the farm, as I have stated. Now, it appears from the testimony that there was also some personal estate left,—how much, I do not remember,—perhaps $1,200 in money, and the stock on the farm, and other personal property; but you can determine that better than I can state it. That personal property did not vest in the heirs on the death of the father, but in the administrator. I think no administrator was appointed until in 1862,—in April, 1862. Possibly the title was vested, technically, until that time, in the heirs, in order to keep the title somewhere; but certainly they had no beneficial interest in it, because the law vests the personal property in the administrator for the payment of the debts, and, after that is accomplished, then the law requires a distribution among the heirs; when, for the first time, they have a beneficial interest. There is something, also, about certain moneys which this widow had in her own right, which came to her from her ancestors. Up to the 3d of April, 1861, the law of Ohio was the same as the common law of England, which upon this subject was, in brief, that the personal property of the wife, including her money; whenever it came to the possession of her husband, became his; and that was the case in Ohio up to the 3d of April, 1861. From that time forward it was made a separate estate of the wife, with the proviso that if she voluntarily placed it in the hands of her husband, then it became his. Now, Mr. Purdy died before the 3d of April, 1861. Whether this money that had come to Mrs. Purdy from her ancestors was vested in him does not appear. It appears from the testimony that it came to her possession; and the presumption is that it continued in her possession until shown that it was taken into his possession, and used by him; so that, as there is no testimony on that subject, I take it that the money she has would fairly be considered as her own property. But whether that was so or not, if you should find that this money was her own, then I say to you that she was not bound to use up her capital for her support. She had a right, so far as the construction of this statute is concerned, to keep that money at interest, depend upon the income from it, and to treat herself

as dependent upon her sons for whatever might be necessary for her support over and above that income.

The testimony shows that William T. Purdy was a minor at the time of his death. That being so, he was under obligation to contribute to the support of his mother, which brings him within one clause of this section, and that leaves the question simply whether she was dependent. Something has been read to you from the opinions of the secretary of the interior as to the construction of that section. Now, his opinion, while it may be used argumentatively to the court, is not an authority on the construction of the law; because the constitution vests that power in the judiciary alone. So that the construction of the secretary of the interior does not fix the meaning of the law; and, while it is correct in some respects, it is clearly wrong in others. There is a statement here that if the income of the relative claiming to be dependent is less than $500 per year, that is to be regarded as making him or her dependent; and if it is over $700, or $750, the construction would be the other way. Well, the court does not recognize that as the true construction of the law. In the opinion of the court it depends upon the circumstances of each case. The mother is entitled to support according to the style in which she has been living. If that has been humble and inexpensive, the amount necessary to provide for her would necessarily be less than if she had been living in a more expensive style. The policy of the government is not to reduce the surviving relatives of the soldier who has lost his life in the service down to the lowest standard of life, but it is to construe the dependent clause, so far as the obligation of the statute is concerned, according to the mode in which the widow had been living. Testimony has been given regarding the rental value of these farms, —the cash value. It ranges from $125 to $150 a year gross rents. That seems a very small rent for 100 acres and a little over, or even for 78 acres; but you must take into account that altogether there were only about 35 acres cleared. Take into account, also, the testimony with reference to the condition of the land, and the improvements upon the farm, and it is simply a question of evidence. Out of this gross income —according to the testimony of the different witnesses—not less than $50, and according to the highest, $75, a year would be required for taxes and improvements. The testimony is that the cost of the support of the old lady, if she did nothing for herself, would be from $250 to $500 a year. That is also for you to pass upon. It is for you to determine from the testimony whether she was adequately provided for, and in determining that you will look to what was necessary for her support. It struck me that the estimate of $500 was altogether out of the way; that it was much more than was necessary, according to the testimony as to the woman's life. If her boarding and washing cost from $3 to $4 a week,—which is the range of the testimony,—$250 to $300 would cover the expense of her living according to the style in which she had been accustomed to live.

The next question is whether there was fraud in the application which would invalidate the pension. That, I think is pleaded in the petition.

Now, I do not think that the mere fact that there were false statements in the application, even if they were intentionally false, is sufficient to invalidate the pension.. It must appear further that they were material, that the false statements were necessary to the granting of the pension. Take, for illustration, the statement in the testimony with reference to the transcript from the auditor's books, that Margaret Purdy had no taxable property. You have heard the statement, and you have heard the explanation that it was not an intentional misstatement, but was made by mistake; that it was supposed that the Margaret Purdy referred to was not the Margaret Purdy in this case, but was a woman who did own considerable property, and was a relative of Margaret Purdy, the defendant, and was known as "Aunt Peggy." As I have already stated, the personal estate of Margaret Purdy, of which her husband had got possession, was his, not hers. And the personal property of the estate did not belong to Margaret Purdy, nor to her children; it belonged to the estate of her husband, and vested in the administrator until the estate was settled. And if it was taxed in the name of Margaret Purdy, that did not make it her property. But suppose she had $1,500 or $2,000 personal property on the tax duplicate, then the question is whether that would have made a showing which would have so changed the conditions as to do away with the question of dependence. I do not see how it could, for she was entitled to the pension and the payment of the interest upon that property, if the interest would not be adequate for her support.

The next proposition made by the government is that, if she had a contract for her support which was adequate for that purpose, there can be no allowance—no proper allowance—of her pension. Now, that is a correct statement of the law. It is to be found in the closing paragraph of section 4707: "Provided, further, that the pension allowed to any person on account of his or her dependence, as hereinbefore provided, shall not be paid for any period during which it shall not be necessary as a means of adequate subsistence." Well, it is very plain that under that provision of the section, if she had made a contract with her son Robert J. Purdy, —as is claimed by the government,—whereby he was to take care of her during her life, and provide for her, she was not entitled to this pension. The first objection made to this point by the defense is that the suit is not placed upon that ground. That is true. But the testimony has been received, and without objection on that score, and the parties were all present in court, so that no surprise has resulted, and the defendants have not been at any disadvantage; and, according to the Code, a variance between the allegations of the pleadings and the proof is not to be regarded as material unless it has actually misled the adverse party to his prejudice in maintaining his action or defense upon the merits. Therefore I think that this point is to be considered, and that, if necessary, the court should allow the pleadings to be amended after the verdict, to make them conform to the evidence. The first question is, did she make such a contract? I think that it is conceded that such a contract was made with Robert. The only question, then, is at what date?

Counsel for the government say that it was made in 1865, 1866, or 1867, at the time when the old lady bought out the shares of the brothers of Robert, and had all the title to the 78 acres conveyed to him, upon an agreement, or for the consideration, that he should support and care for his mother during her life-time.   If that is true, then the pension is invalid; that is to say, if you find that a contract was made as claimed, and that it did provide for her support.   On the other hand, counsel for the defense say that this contract was not made until the 3d of September, 1881.   I leave it for you, gentlemen, to find what the date was. The burden of proof in this case is upon the government; that is to say, if the evidence is evenly balanced on any point the finding should be for the defendants.   If there is a preponderance of evidence in favor of the government, your finding should be for the government; otherwise your finding will be for the defendants.   If you find that Margaret Purdy was not dependent upon the deceased at the time of his death, why then, of course, it would result that the entire pension was invalid, and that the government is entitled to recover the total amount of the pension.   If you find that she was dependent, and that there were no material misrepresentations in the application, why then you come to the question whether this contract was made for her support.   If you find that it was, then the pension stops at the date when that contract went into effect, and so much of the pension as covers the period between that date and the time when the money was paid would be recoverable by the government.

There is one other point that I wish to refer to.   There seems to be bad blood between the brothers in this case.   Now, wherever there is anything of that sort, the only legitimate use that can be made of it by the jury is in weighing the testimony of the parties.   If the witness seems to be swayed by prejudice, or envy, or malice, of course that affects his testimony, but, aside from that, it ought not to prejudice this case either for or against the government.

And as to the pension agent, I do not think that he is open to criticism on account of his diligence; that is what he is employed for.   The United States government has been exceedingly generous to its soldiers, and to their relatives, and has provided a splendid pension fund, and it is perfectly right and proper that it should provide all due and necessary care against peculations from that fund, and that the officers employed should be diligent and active in performing their services.   And the testimony of that witness is to be weighed and considered just as the testimony of the other witnesses, and from all the testimony you are to determine the facts and find your verdict.