Williams, Judge,
delivered the opinion of the court:
The plaintiff during the period covered in this suit, from September 24, 1926, to July 27, 1929, was a lieutenant commander in the United States Navy. He sues to recover the extra rental and subsistence allowances payable to an officer of his rank on account of a dependent mother.
*636 The claim is based on section 4 of the act of June 10, 1922 (42 Stat. 625) which reads:
“The term ‘dependent’ as used in the succeeding sections of this act shall include at all times and in all places a lawful wife and unmarried children under twenty-one years of age. It shall also include the mother of the officer provided she is in fact dependent on him for her chief support. ”
The sole issue in the case is one of fact. Was the plaintiff’s mother during the period of the claim dependent on him for her chief support within the meaning of the statute?
This court has held that each case arising under this statute must stand upon its own particular facts, and that no hard and fast rule can be laid down arbitrarily fixing the value of property, or the amount of income received by a mother, as entirely determinative of the question as' to whether she is “dependent” within the meaning of the law. Freeland v. United States, 64 C. Cls. 364; Rieger v. United States, 69 C. Cls. 632. In Tomlinson v. United States, 66 C. Cls. 697, the mother owned property which yielded a fixed income of $55 per month. Her living expenses approximated $200 per month, of which her son, the plaintiff officer, contributed $150 per month. The court said, p. 700;
“We think the intent of the law is that where the person alleged to be dependent has property which is returning an income, the case should be determined upon the' situation in which the alleged dependent is found, considering the income, which she receives from the property, and then determining whether the amount necessary and proper for her support above the amount of her receipts is such that she is dependent ‘for her chief support’ upon other sources. This view finds support in the case of United States v. Purdy, 38 Fed. 902. We would not go so far as to hold, as the court did in. that case, that ‘the mother is entitled to support according to the style in which she has been living,’ for this style might .be needlessly extravagant, but we do think that the mother is entitled to such support as would be reasonable in accordance with her station in life. What amount per month would be necessary in the case before us, we do not feel called upon to determine further than to say that it is sufficiently large over and above the amount which plaintiff’s mother receives from her individual income to make her in fact dependent on the plaintiff for her chief support.”
*637 In Rieger v. United States, supra, it was held, p. 637:
"We think the words ‘chief support’ used in the statute should be given their ordinary and well-known meaning. ‘Chief’ support means ‘main’ support or ‘principal’ support. We think a mother is dependent for her ‘chief support’ if some one else is required to furnish most, or the greater part, of the funds necessary for her reasonable support.”
During the time in which dependency is claimed the mother had an independent income in her own right of $60 per month, and in addition to this received a contribution from her daughter of $20 per month, making her total income, outside of the contributions received by her from the plaintiff, $80 per month. The plaintiff during this time contributed $150 per month to his mother by direct allotment through the bank, and gave her his one-third part of the income arising from his father’s estate, amounting to $20 per month.
Under the rule announced in the Tomlinson case, supra, and in the Rieger case, supra, it is incumbent on the plaintiff to establish that the amount necessary and proper for his mother’s support, over and above the amount of her income from other sources, was such as to make her dependent on him for her “chief support.” In other words, it must appear that the amount required for her necessary and proper support was chiefly supplied by the plaintiff. The plaintiff has failed to establish that fact. During the first 18 months of the claim the plaintiff’s mother lived with him at his apartment in New York, where he was then stationed. During the remaining period of the claim she lived principally with her married daughter at Jacksonville, Florida, spending a portion of the time, however, with a sister in New Hampshire. It does not appear from the record how the time was divided between the home of the daughter and the home of the sister. The evidence fails to disclose what the mother’s living expenses were, either during the period she lived with the plaintiff in his apartment in New York or during the periods she lived with her daughter and sister. The mother’s testimony on that matter is as follows:
“Question. Your living expenses at that time [the time she lived with the plaintiff in New York], could you say about how much they aggregated and totaled?
“Answer. No, sir.
*638 “Question. When he [the plaintiff] went to sea, where did you go?
“Answer. I came to my daughter in Jacksonville.
“Question. Did you pay any of the living expenses over to your daughter?
“Answer. I did. I paid my own living expenses.
“Question. When you were in New Hampshire did you have any household or living expenses to pay?
“Answer. No; with the exception that I always contributed my share of the living expenses.”
While the mother stated on cross-examination that, “in a general way,” she allowed herself $40 to $50 a month for rent, $2 a day for living expenses, $30 a month for running her car, $75 a month for clothes, and $50 for miscellaneous expenses, and an unnamed amount for medical and traveling expenses, it does not appear that these amounts were expended by her, or that they were required for her necessary and proper support. In fact it clearly appears that these amounts were not expended by her, and that she was unable to state or even to approximate the amount of her actual living expenses during any period of the claim.
The fact that the plaintiff’s monthly contribution to his mother was in excess of her independent income does not of itself establish the fact that she was dependent on him for her chief support. It must be shown that his contribution was required for her necessary and proper support, and, that it constituted the chief part of such support. The amount required for the necessary and proper support of the plaintiff’s mother not being shown, the court can not say that the amount necessary for her support, above the income of $80 per month received by her, was such that she was dependent on the plaintiff for her “chief support.”
The Government’s counterclaim for $599.01. — The plaintiff, being on sea duty during the periods from April 16, 1918, to May 17, 1918, and April 11,1919, to November 25,1919, was paid the sum of $599.01 on account of commutation of quarters, heat, and light because of a dependent mother, under the act of April 16, 1918 (40 Stat. 530):
“That during the present emergency every commissioned officer of the Army of the United States on duty in the field, or on active duty without the territorial jurisdiction of the United States, who maintains a place of abode for a wife, child *639 or dependent parent, shall be furnished at the place where he maintains such place of abode, without regard to personal quarters furnished him elsewhere, the number of rooms prescribed by the Act of March second, nineteen hundred and seven (Thirty-fourth Statutes, page eleven hundred and sixty-nine), to be occupied by, and only so long, as occupied by, said wife, child, or dependent parent; and in case such quarters áre not available every such commissioned officer shall be paid commutation thereof and commutation for heat and light at the rate authorized by law in cases where public quarters are not available; * *
The Government files a counterclaim for the amount of the allowances, $699.01, on the ground that the plaintiff’s mother was not dependent on him for support during the periods for which the payments were made.
The plaintiff’s father was a successful and prominent lawyer. From 1921 to 1925 he served as United States district judge in Porto Rico at a salary of $7,500 per year. His income as a practicing attorney for some years preceding his appointment as Federal judge, and during the periods here involved, was equal to or possibly greater than his salary as a judge. For ten years prior to his death he had furnished his wife, the plaintiff’s mother, on an average of $350 per month for her living expenses. Manifestly the plaintiff’s mother could not be dependent on him for support during the time she was living with the plaintiff’s father at their home and was being furnished $350 per month by him for her living expenses. In his various claims for commutation of quarters and allowances for heat and light on account of a dependent mother, and in the various vouchers executed by him, the plaintiff stated that he had maintained a place of abode for his mother at 312 Magnolia St., Arcadia, Florida, for the periods for which the allowances were paid, except the period from July 1, 1918, to July 31, 1918, during which period he stated he had maintained a place of abode for her at 31 Main St., Lancaster, New Hampshire. The place of abode of the plaintiff’s mother in Arcadia, Florida, was not furnished by the plaintiff. It was furnished by the plaintiff’s father and was occupied by him and the plaintiff’s mother as their home until the time of the father’s appointment as judge in Porto Rico.
*640 In view of these facts the plaintiff’s mother could not have been dependent on him for support during the periods for which the allowances were paid, and such payments were not authorized under the act of April 16, 1918. The payments were not validated, either by the act of May 26, 1926, or the act of July 3, 1926. The Government is, therefore, entitled to recover on its counterclaim. It is so ordered.
The petition of plaintiff is dismissed.
Whaley, Judge) LittletoN, Judge; GreeN, Judge; and Booth, Chief Justice, concur.