**SOMMER CORPORATION, Plaintiff,**

v.

**PANAMA CANAL COMPANY,
Defendant.**

**Civ. No. 6969.**

District Court, Canal Zone,
Division Balboa.

July 30, 1971.

As Amended Aug. 25, 1971.

Henry L. Newell, Balboa, Canal Zone, for plaintiff.

Dwight A. McKabney, John A. Cooper, John L. Haines, Jr., and Earl R. Mc-Millin, Balboa Heights, Canal Zone, for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

CROWE, District Judge.

The following is statement of the case as set out in the Pretrial Conference of July 13, 1971 and contains facts material to the case that were agreed to by the parties. Some of the facts are reiterated in the Findings of Fact which follow this statement.

On May 15, 1969, nine (9) packages of General Electric transformer radiators were delivered to the Gulf Outport, 4400 Dauphine Street, New Orleans, Louisiana. These transformer radiators were consigned to plaintiff, Sommer Corporation, and were destined for Balboa, Canal Zone. These goods were intended for use by plaintiff in a project which it had undertaken for defendant, Panama Canal Company, pursuant to Contract Number PC–2–1141.

Defendant had custody of the transformer radiators from the time the defendant received the goods in New Orleans until the time it turned the goods over to plaintiff in Balboa, Canal Zone. The goods were taken aboard defendant's Steamship SS CRISTOBAL and carried from New Orleans to Cristobal.

In Cristobal the goods were discharged by defendant onto its pier on May 20, 1969. The goods were subsequently placed aboard various railroad cars of defendant's railroad by employees of defendant for transportation to Balboa.

This carriage was accomplished pursuant to Panama Canal Company Short Form Bill of Lading, Number 39, which was issued in New Orleans on May 16, 1969, by a duly authorized representative of the Panama Canal Company. No exceptions were made on the bill of lading; the entire shipment was laden aboard the SS CRISTOBAL in New Orleans in good order. At some point during the carriage of the nine (9) packages of transformer radiators and while the goods were in the custody of defendant, the damage which is described in detail in the cargo survey report of Mr. John D. Akers, surveyor for the American Institute of Marine Underwriters and dated September 8, 1969, occurred.

Plaintiff did not make any direct payment either by check or in cash to defendant for the ocean transportation or for the trans-isthmian rail transportation of these goods nor did defendant make any demand that plaintiff pay for the ocean or rail transportation. Plaintiff did pay defendant for the handling of the goods on the pier in Cristobal. Charges for this carriage were levied pursuant to the provisions of paragraph GC 13 of the General Conditions for Panama Canal Company and Canal Zone Government Construction Contracts which relate to cargo which is carried under a thru bill of lading.

At all times material hereto, Sommer Corporation was a foreign corporation qualified to do business in, and with a place of business in, the Canal Zone. The Panama Canal Company was and is a wholly-owned corporate agency of the United States of America incorporated by the Panama Canal Company Act of June 29, 1948 (c. 706, sec. 2, 62 Stat. 1076), as amended by Act of September 26, 1950 (c. 1049, secs. 5 et seq., 64 Stat. 1041). The incorporation statute is now

contained in Title 2, Canal Zone Code, sections 61–75 and 121–123, 76A Stat. 8–15. The Panama Canal Company was and is authorized to operate vessels between the United States and the Canal Zone for the carriage of passengers and freight, to maintain docks, wharves, piers and harbor facilities, to render services to vessels and to maintain and operate a railroad across the Isthmus of Panama, 2 C.Z.C. 66(a) (2), (3) and (4), 76A Stat. 11.

## FINDINGS OF FACT

1. Defendant, Panama Canal Company, was and is a wholly-owned corporate agency of the United States of America incorporated by the Panama Canal Company Act of June 29, 1948 (c. 706, sec. 2, 62 Stat. 1076), as amended by Act of September 26, 1950 (c. 1049, secs. 5 et seq., 64 Stat. 1041). The Panama Canal Company was and is authorized to operate vessels between the United States and the Canal Zone for the carriage of passengers and freight, to maintain docks, wharves, piers and harbor facilities and to render services to vessels, 2 C.Z.C. 66(a) (2), (3) and (4), 76A Stat. 11.

2. Plaintiff, Sommer Corporation, was and is a foreign corporation qualified to do business in, and with a place of business in, the Canal Zone.

3. On June 30, 1967, plaintiff entered into a contract with defendant whereby plaintiff agreed to install electrical equipment in defendant's power plant and defendant agreed to pay plaintiff for the work. This contract, Number PC–2–1141, incorporated the provisions of the contract specifications, Serial Number PC–67–64.

4. Subsequent to the award, plaintiff, in accordance with bid specifications, supplied defendant with a breakdown of all material and equipment it was going to furnish, together with all the brochures and literature required by the specifications. After examining this information defendant approved the equipment, learned its value, and also submitted an estimated "bid" based upon catalogs and values of all types of similar equipment to be used on the project.

5. The contract specifications incorporated the General Conditions contained in the booklet entitled "General Conditions for Panama Canal Company and Canal Zone Government Construction Contracts," July 1966. These General Conditions contained a provision in paragraph GC 13(f) under which plaintiff could ship contract materials free by way of defendant's steamship CRISTOBAL.

6. Plaintiff through its agent, Transmarine, arranged to ship nine mixed transformer parts aboard defendant's steamship. This shipment was thrubilled from New Orleans to Balboa. In accordance with the provisions of paragraph GC 13(f) of the General Conditions, both the ocean transportation and the rail transportation were for defendant's account. This transportation furnished by defendant had a value of $1,056.00 as determined by the defendant as between its divisions, but plaintiff was never billed for this amount nor did it pay it.

7. On May 15, 1969, the nine mixed transformer parts were delivered to defendant at 4400 Dauphine Street, New Orleans, Louisiana. Defendant had custody of the transformer parts from the time defendant received them in New Orleans until the time defendant turned the goods over to plaintiff in Balboa, Canal Zone.

8. On May 16, 1969, the Panama Canal Company issued Short Form Bill of Lading Number 39 to cover the carriage of the nine mixed transformer parts. This bill of lading was signed by a duly authorized representative of the defendant. No exceptions were made on the bill of lading; the entire shipment was laden aboard defendant's vessel in good order.

9. Plaintiff wrote its suppliers to send the goods to defendant's dock in New Orleans for shipment by way of the

Panama Line and marked "Sommer Corporation, Contract Number PC–2–1141, Balboa, Canal Zone."

10. The defendant received the goods and prepared and issued its Short Form Bill of Lading which, on the rear, incorporated by reference defendant's Regular Bill of Lading which is of greater length and in fine print. The bill of lading did not declare a value on its face nor does the bill of lading indicate in any manner where a value should be placed or stated.

11. The plaintiff was sent only the Short Form Bill of Lading by the defendant who never advised it of the terms of the Long Form Bill of Lading and it never sent to plaintiff a copy of its Tariff Act although it had sent over 200 copies to steamship agencies, contractors and other interested parties.

12. The goods were carried to the Port of Cristobal from New Orleans and discharged by defendant's employees onto defendant's pier.

13. At some time after the goods were discharged from defendant's ship on May 20, 1969, but before they were loaded aboard defendant's railroad on May 29, 1969, and while the goods were in defendant's custody, the damage complained of occurred to three packages of transformer radiators.

14. The three packages which were damaged were shipped in a frame supported at each corner by an 8″ angle iron with some wood pieces between the transformer radiators to stiffen the load. There were no handling instructions marked on any of the packages. They were properly packed.

15. The goods were transported to Balboa by rail. Plaintiff obtained the required Customs Division and Contract Inspection Branch stamps on the first original copy of the bill of lading and paid $24.50 handling charge for the handling of the goods on the Cristobal piers. The goods were then released to plaintiff. According to defendant's handling charges, plaintiff should have paid either $97.63 or $104.50, depending upon the value that was ascribed to the

goods and defendant's method of computation. The $24.50 fee was therefore an error on the part of defendant, but was paid without question by plaintiff.

16. The handling charge was levied in accordance with paragraph GC 13(f) of the "General Conditions for Panama Canal Company and Canal Zone Government Construction Contracts," July 1966, and in accordance with the Official Panama Canal Company/Canal Zone Government Tariff, Part One. No extra handling charge was levied upon plaintiff pursuant to section 162.39(b) of the tariff which provides for an ad valorem surcharge in the event there is a higher declared value made for the goods. The defendant could have levied the surcharge, had it desired, because it was fully informed as to the value of the goods.

17. The defendant's vessel is not a public carrier as it can only accept cargo limited by regulations pursuant to the duty for the Republic of Panama, and by reason of it being a vessel owned by a government corporation it can only carry cargo free of freight charges for Panama Canal Company and Canal Zone Government purposes. Any freight charges for goods so carried, which included the goods in the case at bar, were taken into consideration in bidding on the contract. If the goods in this case were to have been shipped to the Canal Zone in another manner the freight costs would have been added to the cost of the goods and would have been about 10 or 15 percent more.

18. The damage to the cargo as shown in the Pretrial Conference Order and as stipulated by the parties is $9,610.85 and the plaintiff was required to make payment of this sum to the repairmen upon completion of the work for repairs.

## CONCLUSIONS OF LAW

1. The court has jurisdiction of the parties and subject matter of this action.

2. The Carriage of Goods by Sea Act, 46 U.S.C. § 1300 et seq., 49 Stat. 1207 was in effect and governed the contract of carriage during the voyage from New

Orleans to Cristobal, Canal Zone. When the goods were discharged at Cristobal the Act, as a matter of law, was no longer operative but its provisions were incorporated into and made a part of the *contract* by Short Form Bill of Lading Number 39, the difference being that instead of being a statutory obligation the relationship now became one of contract and the entire contract between the parties must be scrutinized and their rights determined by reason of the unusual relationship of the carriage.

3. The defendant knew full well the value of the goods because of the careful bidding, submission of brochures and engineering studies that it made at the time of the letting of the contract, so the requirement of Section 1304(5) that the "value of such goods be declared by the shipper before shipment" was certainly fully met. The value was not inserted in the bill of lading by plaintiff for in fact he had no opportunity to do so and such an insertion would have added nothing to the advantage of defendant for in truth it knew the value anyway. In Reid v. Fargo, 241 U.S. 544, 36 S.Ct. 712, 60 L.Ed. 1156, (1916), a pre-Cogsa case, a $3,900 automobile was delivered to the American Express Company for shipment. It boxed the car and shipped it under a bill of lading valuing the package at $100. The car was damaged and the court held that the express company was liable to the owner if full recovery was not had otherwise (the stevedore) because it had accepted a bill of lading fixing the package value at $100 when it knew its true value was much more. In the case at bar, although no valuation was shown in the bill of lading, the defendant was in possession of all of the facts and knew the value.

4. The value did not have to be inserted in the bill of lading for tariff purposes as under the contract, as established by the General Conditions for Panama Canal Company and Canal Zone Government Construction Contracts, July 1966, plaintiff's exhibit 3, the goods were transported at "no expense to the contractor", (plaintiff), except for the handling charge on the dock and this was fixed by the defendant with full knowledge of the value of the goods and the goods were handled by defendant. No independent stevedore was involved who might have been prejudiced by ignorance of the value.

5. Defendant would enforce upon plaintiff the condition of an independent shipper and an independent carrier as envisioned by the terms of Cogsa, but such is not the case. The parties here were involved in a close contractual relationship where the defendant knew everything necessary about the goods and although there was an inter-accounting in defendant's divisions and a handling charge fixed by the defendant to be paid by plaintiff, in the strictest sense of the word no tariff was really involved. The goods were to be used by plaintiff in a construction job for the defendant so rather than a contract for shipping in the regular channels of commerce this is actually a contract for construction where the defendant agreed as a part of its obligations to transport the goods to the construction scene.

6. Admiralty has power to give equitable relief in causes of action based upon the concept of unjust enrichment when the claim arises out of a maritime contract. Admiralty Law of the Supreme Court, Second Edition, by Herbert R. Baer, Chapter 15, pages 363–367.

7. The amount of defendant's liability to the plaintiff for the damage to the three packages of transformer radiators is not limited and therefore the plaintiff shall recover from the defendant the sum of $9,610.85, together with interest thereon at the rate of six per cent per annum from the date of the discovery of the damage, which was May 29, 1969, and its costs herein expended.

ORDER PARTIALLY SETTING ASIDE JUDGMENT AND AMENDING CONCLUSIONS OF LAW

The Conclusions of Law entered in this case on July 30, 1971 in Conclusion

Number 7 and the Judgment entered on the same day by the Clerk awarded interest to the plaintiff at the rate of six percent per annum from the date of the discovery of the damage, which was May 29, 1969. The defendant, Panama Canal Company, in accordance with Rule 60(b) of the Federal Rules of Civil Procedure, moved the Court to partially set aside the Judgment and to amend the Conclusions of Law on the ground, among other things, that the stipulation set out in the Pre-Trial Order entered in the case was that "The total amount of damages is here stipulated to be $9,-610.85."

■ Interest awards in admiralty are the general rule and disallowance thereof is supportable only in the face of exceptional circumstances. "It is generally recognized that the allowance of interest on awards in admiralty is a matter lying within the trial court's discretion." O'Donnell Transp. Co., Inc. v. City of New York, 2 Cir., 215 F.2d 92; American Union Transport Co., Inc. v. Aguadilla Terminal, Inc., 302 F.2d 394 (1962); 1962 AMC 2471. As interest had been prayed for in the complaint and the plaintiff had been deprived of the use of his funds during the period from about the date of the injury, even though no argument was had on the question it was felt that an allowance of interest would be equitable and was therefore adjudged.

On review of the motion to partially set aside and amend, it now appears that this Court erred in that the stipulation contained in the Pre-Trial Conference Order was binding on the Court and the parties in the absence of any grounds which would authorize the Court to set it aside. Morse Boulger Destructor Company v. Camden Fibre Mills, Inc., 239 F.2d 382 (1956). In the cited case, which is almost on all fours with the case at bar, the Third Circuit refused to permit the lower court to allow interest because of the binding stipulation. In compliance with this ruling the Conclusion of Law Number 7 will be amended to read as follows:

7. The amount of defendant's liability to the plaintiff for the damage to the three packages of transformer radiators is not limited and therefore the plaintiff shall recover from the defendant the sum of $9,610.85, together with interest thereon at the rate of six per cent per annum from the date of entry of judgment and its costs herein expended.

An order dated August 24, 1971 has already been entered making this correction and the Clerk has entered an amended Judgment.