**NEW YORK STATE WATERWAYS AS-SOCIATION, INC., et al., Appellants,**

v.

**Henry L. DIAMOND et al., Appellees.**

**No. 63, Docket 72–1249.**

United States Court of Appeals, Second Circuit.

Argued Oct. 16, 1972.

Decided Nov. 10, 1972.

Before WATERMAN, SMITH and KAUFMAN, Circuit Judges.

J. JOSEPH SMITH, Circuit Judge:

Plaintiffs below, an association of owners and operators of tugboats and other vessels responsible for the movement of the bulk of barge traffic in New York and the adjacent states, brought suit in the United States District Court for the Western District of New York, seeking declaratory and injunctive relief against the enforcement of New York Navigation Law § 33–c (McKinney Supp. 1972), McKinney's Consol.Laws, c. 37. That statute prohibits, *inter alia,* the discharge of sewage into the waters of New York, and requires that marine toilets be equipped with a pollution control device, designed for either the treatment or holding of sewage. Judge Harold P. Burke denied plaintiffs' request for a three-judge court and dismissed the complaint, holding that there was no federal subject-matter jurisdiction, that no substantial constitutional question was presented, and that, in any event, federal courts should abstain until the New York judiciary had an opportunity to interpret section 33–c. We reverse, and remand for the convening of the statutory three-judge court.

Plaintiffs' attack upon section 33–c is a wholesale one. In the main, they contend that section 33–c constitutes an impermissible burden upon interstate commerce. They assert that they are faced with a multiplicity of conflicting pollution standards in the several states and Canadian provinces surrounding New York; that no adequate onshore facilities exist for pumping out sewage; and that present on-board treatment methods involve the use of chemicals which are themselves pollutants. Plaintiffs also claim that the Federal Water Quality Improvement Act, 33 U.S.C. § 1151 et seq., evidences a Congressional intent to preempt the field, and that they should not be put to the significant expense of complying with section 33–c when forthcoming federal standards may require wholly different equipment. Plain-

Eugene Van Voorhis, Rochester, N. Y. (Branch, Van Voorhis & Wise, Rochester, N. Y.), for appellants.

Thomas F. Harrison, Asst. Atty. Gen. (Louis J. Lefkowitz, Atty. Gen. of the State of New York, Samuel A. Hirshowitz, First Asst. Atty. Gen., Philip Weinberg, Asst. Atty. Gen., of counsel), for appellees.

tiffs further attack the statute as unconstitutionally vague, as a denial of Fourteenth Amendment equal protection, and as an unconstitutional state interference with uniform maritime law.

After receiving a number of affidavits and exhibits from both sides, Judge Burke held a hearing on motions for temporary injunctive relief. At that time, defendants renewed a motion to dismiss the complaint. In a memorandum dated January 12, 1972, Judge Burke denied the motions for injunctive relief and granted the motion to dismiss.

 Noting that admiralty jurisdiction will not support a claim for injunctive relief,[1] Khedivial Line, S.A.E. v. Seafarers' Int'l Union, 278 F.2d 49 (2d Cir. 1960),[2] and finding no other basis for federal jurisdiction pleaded, the court below dismissed for lack of subject matter jurisdiction. While plaintiffs' complaint is hardly a model of compliance with the Federal Rules of Civil Procedure 8(a)(1) requirement of a "short and plain" statement of the claimed jurisdictional basis of a suit, it is our duty to read it liberally, to determine whether the facts set forth justify taking jurisdiction on grounds other than those most artistically pleaded. Williams v. United States, 405 F.2d 951, 954 (9th Cir. 1969); 5 C. Wright & A. Miller, Federal Practice and Procedure

(1969) § 1206. There is clearly jurisdiction here under the general federal question provision, 28 U.S.C. § 1331. While the admiralty claims are not in themselves section 1331 federal questions, Romero v. International Terminal Operating Co., 358 U.S. 354, 79 S.Ct. 468, 3 L.Ed.2d 368 (1959), the issues raised under the Supremacy Clause, the Commerce Clause, and the Fourteenth Amendment undoubtedly are. Moreover, plaintiffs make plausible allegations that the amount in controversy exceeds the $10,000 jurisdictional requirement.

 Given the jurisdictional basis for the suit, and the fact that plaintiffs clearly seek injunctive relief against the enforcement of a state statute on the grounds of unconstitutionality, a 28 U.S.C. § 2281 three-judge district court is mandated if the constitutional attack is not insubstantial. Idlewild Bon Voyage Liquor Corp. v. Epstein, 370 U.S. 713, 82 S.Ct. 1294, 8 L.Ed.2d 794 (1962). While navigation in the sea of section 2281 substantiality is often unsure, here we have something of a beacon in the Supreme Court's decision in Lake Carriers' Association v. MacMullan, 406 U.S. 498, 92 S.Ct. 1749, 32 L.Ed.2d 257 (1972). That case involved an attack by owners of Great Lakes cargo vessels upon a Michigan statute similar to sec-

---

1. It is clear, however, that admiralty jurisdiction will allow the granting of a declaratory judgment. Admiralty R. 59, 368 U.S. 1040 (1961); Brunson v. Iowa Home Mutual Casualty Co., 224 F.Supp. 592 (S.D.Ala.1963).

2. We recognize that the hoary proscription of The Eclipse, 135 U.S. 599, 10 S.Ct. 873, 34 L.Ed. 269 (1890), against admiralty courts granting equitable relief has undergone increasing erosion in recent years; see, e. g., Vaughan v. Atkinson, 369 U.S. 527, 530–531, 82 S.Ct. 997, 8 L.Ed.2d 88 (1962); Swift & Co. v. Compania Caribe, 339 U.S. 684, 70 S.Ct. 861, 94 L.Ed. 1206 (1956); Compania Anonima Venezolana De Navegacion v. A.J. Perez Export Co., 303 F.2d 692, 699 (5th Cir.), cert. denied, 371 U.S. 942, 83 S.Ct. 321, 9 L.Ed.2d

276 (1962); Sommer Corp. v. Panama Canal Co., 329 F.Supp. 1187 (D.Canal Zone 1971); Lee v. Thompson, 50 F.R.D. 138, 140 (E.D.Va.1970); and has come under sharp attack from the commentators; see, e. g., G. Gilmore & C. Black, The Law of Admiralty (1957) § 1–14; Note, Admiralty Practice After Unification: Barnacles on the Procedural Hull, 81 Yale L.J. 1154, 1157–63 (1972). Nevertheless, mindful as we are of Justice Frankfurter's admonition to be wary of generalizations when dealing with the admiralty, Compania Caribe, supra, 339 U.S. at 690, 70 S.Ct. 861, we still think it fair to say that the power of an admiralty court to grant injunctive relief remains severely circumscribed. See Moran Towing & Transportation v. United States, 290 F.2d 660, 662 (2d Cir. 1960).

tion 33–c.[3] A three-judge court was convened, but refused to reach the merits because it saw no justiciable controversy, and thought abstention proper. 336 F.Supp. 248 (E.D.Mich.1971). The Supreme Court affirmed, finding a justiciable controversy, but upholding abstention, albeit on narrower grounds than the district court. While the Supreme Court did not reach the merits, it did note, 406 U.S. at 504 n. 5, 92 S.Ct. 1749, that the three-judge court was properly convened, because of the assertion of "nonfrivolous" constitutional claims.

According to the district court opinion, 336 F.Supp. at 249, there were five major issues presented by the Lake Carriers' complaint: (1) federal preemption of the field, (2) burden on interstate commerce, (3) interference with uniform maritime law, (4) equal protection and due process, and (5) vagueness. Those are also the major issues here. Unfortunately, neither the Supreme Court nor the Michigan three-judge court identified which of those claims were substantial enough to meet the section 2281 requirements. But since the first issue invokes Supremacy Clause considerations, the convening of the three-judge court must have involved determinations of substantiality wholly apart from it. See Swift & Co. v. Wickham, 382 U.S. 111, 86 S.Ct. 258, 15 L.Ed. 2d 194 (1965).

Defendants, perceiving the chief thrust of both Lake Carriers' and the present case to be on the Commerce Clause issue, seek to distinguish the New York law from the Michigan one. They claim that since section 33–c (1)(a) exempts from its coverage "passenger or cargo-carrying vessels subject to the Quarantine Regulations of the United States Public Health Service," its impact is wholly intrastate. Consequently, even accepting the substantiality of the Lake Carriers' attack, they characterize the present case as frivolous.

While this distinction may make resolution of this controversy easier than Lake Carriers', it does not make the complaint here insubstantial. First, section 3(1) of the Michigan law, to which a large measure of the Lake Carriers' vagueness argument was directed, reads virtually in haec verba with section 33–c (2)(a). Both prohibit the discharge of materials "which render the water unsightly, noxious or otherwise unwholesome so as to be detrimental to the public health or welfare or to the enjoyment of the water for recreational purposes." Even assuming that the coverage of the New York statute is wholly intrastate in nature, the vagueness argument remains, and the Supreme Court strongly implied, through its decision to abstain, 406 U.S. at 511–512, 92 S.Ct. 1749, that the argument had some merit.[4] Second, there is

3. The Michigan statute was enacted as part of the Michigan Watercraft Pollution Control Act of 1970, Mich.Comp. Laws Ann. § 323.331 et seq. (Supp. 1971). We note, but in no way find dispositive, the fact that despite the distinctions now urged upon us, the Michigan suit so interested the Attorney General of New York that he filed an amicus curiae brief before the Supreme Court.

4. It is true that the Supreme Court noted some uncertainty over whether the discharge of even treated sewage was prohibited by the Michigan law. 406 U.S. at 511, 92 S.Ct. 1749. While section 33–c(3)(a) of the New York statute prohibits only the discharge of untreated sewage from marine toilets into state

waters, questions about the scope of section 33–c(2)(a) nevertheless remain. That subsection prohibits the placement, throwing, deposit, or discharge of any "sewage, or other liquid or solid materials which render the water unsightly. . . ." "Sewage" is in turn defined by subsection (1)(c) as "all human body wastes." Even if the broad scope of section 33–c (2)(a) is considered limited by the specific language of section 33–c(3)(a), there may very well be vagueness difficulties in determining what materials render New York waters "unsightly, noxious or otherwise unwholesome so as to be detrimental to the public health or welfare or to the enjoyment of the water for recreational purposes."

some question about the scope of the section 33–c(1)(a) exemption. That subsection excludes only "passenger and cargo-carrying" vessels subject to the Quarantine Regulations from state coverage. The tugboats of the plaintiffs, even if assumed *arguendo* to be covered by the Quarantine Regulations,[5] are at least arguably not passenger and cargo-carrying, and thus may well not fall within the statutory exception. Third, even if the coverage of the New York statute is somewhat less complete than that of the Michigan one, if plaintiffs are covered at all they raise what Mr. Justice Powell aptly characterized as a "classic case for declaratory relief" in their allegations that section 33–c poses an immediate choice between criminal prosecution and the expenditure of substantial sums of money for equipment that may not be compatible with forthcoming federal regulations. 406 U.S. at 514, 92 S.Ct. 1749 (dissenting opinion).

In light of the *Lake Carriers'* case, which even the minority saw as involving "important" federal questions,[6] we cannot say that the issues presented here, however arguably distinguishable the statutes involved, are so insubstantial as to warrant dismissal of the complaint.[7] A three-judge court should have been convened.

There remains the question of abstention. While a three-judge court may well find *Lake Carriers'* persuasive authority on the point, the decision to abstain is for the three-judge court, not for the single judge. Abele v. Markle, 452 F.2d 1121 (2d Cir. 1971). We do note, however, that the outcome is by no means preordained. The Supreme Court found abstention justified in *Lake Carriers'* only by reference to limited "special circumstances," apparently posed by ambiguities in the wording of the Michigan statute. Defendants, who have so strongly here urged the distinctions between the New York and Michigan laws, may well convince the three-judge court of the impropriety of following *Lake Carriers'* on the abstention point. At any rate, that problem is properly within the purview of the statutory three-judge court.

Consequently, we reverse the judgment below, and remand for the convening of a three-judge court, pursuant to 28 U.S.C. § 2281, to consider the entire complaint, including any Supremacy Clause issues. *See* Florida Lime & Avocado Growers v. Jacobsen, 362 U.S. 73, 80 S.Ct. 568, 4 L.Ed.2d 568 (1960); Lake Carriers', *supra,* 406 U.S. at 504 n. 5, 92 S.Ct. 1749.

---

5. There exists at least some surface uncertainty about whether the plaintiff's vessels are at all covered by the Quarantine Regulations, 42 C.F.R. § 72.1 et seq. First, section 72.1(i)(2) excludes from the definition of interstate traffic the movement of any conveyance solely for the purpose of transporting property to and from a foreign country. Thus, to the extent that plaintiffs operate on the Great Lakes between Canada and the United States, they are possibly without the Regulations. Moreover, the definition of vessel excludes both "Tugs which operate only locally in specific harbors and adjacent waters," section 72.1(o)(2), and "Barges without means of self-propulsion," section 72.1(o)(3).

6. 406 U.S. at 516, 92 S.Ct. 1749 (Powell, J. and Burger, C. J., dissenting).

7. *Cf.* American Waterways Operators, Inc. v. Askew, 335 F.Supp. 1241 (M.D.Fla. 1971) (three-judge court), prob. juris. noted, 405 U.S. 1063, 92 S.Ct. 1501, 31 L.Ed.2d 793 (1972).