**Marie SNEAD, Plaintiff,**

v.

**DEPARTMENT OF SOCIAL SERVICES OF the CITY OF NEW YORK, a governmental agency, et al., Defendants.**

**No. 72 Civ. 4536.**

United States District Court,
S. D. New York.
Nov. 30, 1972.

for restitution of alleged wrongfully withheld funds under a state school grant program.

Covington, Grant, Howard, Hagood &
Holland, New York City (George Donald
Covington, New York City, of counsel),
Thomas Hoffman, Nathaniel R. Jones,

James I. Meyerson, N.A.A.C.P., New York City, for plaintiff.

Louis J. Lefkowitz, Atty. Gen., State of New York, New York City, for State defendants; Samuel A. Hirshowitz, First Asst. Atty. Gen., Lillian Z. Cohen, Asst. Atty. Gen., of counsel.

Norman Redlich, Corp. Counsel, New York City, for City defendants; Leonard Bernikow, Michael A. Weber, New York City, of counsel.

EDWARD WEINFELD, District Judge.

Plaintiff commenced this action for a judgment declaring section 72 of the New York Civil Service Law,[1] which governs leaves of absence for mental disability of civil service employees, unconstitutional as violative of the due process and equal protection clauses of the Fourteenth Amendment and for a permanent injunction enjoining the defendants from taking any action thereunder. Jurisdiction is grounded on 28 U.S.C., sections 1331, 1343(3), (4) and 42 U.S.C., section 1983. In addition to her constitutional challenge to section 72, plaintiff asserts a separate claim based upon the alleged racial discriminatory application of the statute to her in retaliation for her "negative opinions" of the operation of her department.

Plaintiff is a social worker employed by the Department of Social Services of the City of New York since December 1965 in permanent civil service status. The defendants include the Social Services Department of the City of New York, the New York City and State Civil Service Commissions, and individuals of the foregoing agencies in their official capacities.

Plaintiff now moves for (1) the convening of a three-judge court, pursuant to 28 U.S.C., sections 2281 and 2284; and, pending the final determination of the merits by the panel, (2) a prelimi-nary injunction and temporary order suspending the enforcement of section 72 and directing the defendants to reinstate plaintiff with retroactive pay. The defendants cross move to dismiss the complaint pursuant to Rule 12(b)(1) and (6) of the Federal Rules of Civil Procedure on the grounds that the court lacks subject matter jurisdiction and the complaint fails to state a claim upon which relief may be granted. In addition, assuming there is jurisdiction, they urge that the court abstain from exercising it in this case.

■ Under the first branch of plaintiff's motion, the request for a three-judge panel, the issue is whether one or more of the constitutional claims are substantial and present a basis for equitable relief.[2] Section 72 is of statewide application and governs the procedure applicable to civil service employees who are allegedly mentally unfit to perform their duties. The section provides that when, in the judgment of an appointing authority, an employee is unable to perform his duties, he may require him to submit to a medical examination conducted by a medical officer selected by the state or municipal civil service authority having jurisdiction. If the examining medical officer certifies that the employee is not mentally fit to perform his duties, the appointing authority may place the employee on leave of absence. An employee placed upon such leave is to be given a written statement of the reasons therefor and is entitled to all his accumulated time allowances; however, he is not entitled to pay or other benefits while the leave status is in effect.

Subdivision 2 of the section provides that an employee so placed on leave may, within one year after the date of its commencement, apply to the civil service department or municipal commission for a medical examination by a medical offi-

---

1. N.Y.Civ.Serv.Law § 72 (McKinney's Consol.Laws, c. 7 Supp.1972).

2. Idlewild Bon Voyage Liquor Corp. v. Epstein, 370 U.S. 713, 82 S.Ct. 1294, 8 L.Ed.2d 794 (1962); Ex parte Poresky, 290 U.S. 30, 32, 54 S.Ct. 3, 78 L.Ed. 152 (1933).

cer selected for that purpose by such authority, and if certified by the officer as mentally capable of performing his duties, the employee shall be reinstated to his position.

Subdivision 3 provides for an appeal to the state or municipal civil service commission having jurisdiction from the initial finding of unfitness or following a refusal of reinstatement, and upon such appeal the commission "may conduct such inquiry as it deems necessary or desirable" and shall provide for a medical examination by a doctor other than the one who previously examined the employee. It further provides that if the commission finds that the determination appealed from is arbitrary and unreasonable, it shall direct the reinstatement of the employee. Finally, subdivision 4 provides that if the employee is not reinstated within one year after the commencement of his leave, his employment status may be terminated under section 73.

The authorities have not promulgated any rules or regulations as to the procedures to be followed under section 72. Since plaintiff contends that it is unconstitutional upon its face for lack of procedural due process requirements, it is desirable to review the procedure that was applied in her case, particularly so since the facts come into play on her application for a temporary order directing her reinstatement.

The section 72 procedure was triggered on April 17, 1972, by a memorandum signed by plaintiff's supervisor and directed to a personnel officer. The document specified various acts and conduct by plaintiff, the details of which need not be elaborated upon here, but which in substance attributed bizarre conduct to her, including charges of bias and hostility toward plaintiff by coworkers and superiors and also that they were spying on and following her. The memorandum contained hearsay statements, as well as matters which may have been within the personal knowledge of the writer. Evidently the memorandum led to an interview on that day between the plaintiff and a personnel officer, the aftermath of which was a heated conference that same evening between its author and the plaintiff, when it appears she made new charges parallelling those set forth in the initial memorandum. A second memorandum touching upon plaintiff's alleged conduct at this conference was sent to a personnel officer.

Thereafter, section 72 was invoked by plaintiff's appointing officer and she was ordered to appear for medical examination on May 8, 1972, at "our office of Psychiatry" (Social Services Department), where she was examined by a Dr. Robert Reich. He concluded that "[i]n her present state Miss Snead is unable to perform the duties of her assignment and it is recommended that she be considered for medical leave of absence," following which, on May 10, she was advised by her appointing officer that she was placed on a leave of absence for one year "because one of our medical officers has found that you are unable to work owing to disability."

Less than two weeks later, on May 22, a psychiatrist, apparently privately engaged by plaintiff, wrote to plaintiff's personnel director that "she revealed no inclination to endanger the lives of her coworkers" and recommended that she be permitted to return to her job as soon as possible, "especially as there is a strong possibility that both economic and emotional hardships might create serious anxiety problems for her the longer she is separated from her job." In mid-July, at plaintiff's request, an appointment was scheduled with Dr. Reich, but she failed to appear and was advised that as a consequence the leave of absence was continued in force.

Plaintiff was not given a copy of either the initial or the follow-up memorandum upon the basis of which her appointing officer directed that she submit to a medical examination; they contain much hearsay and abound in numerous allegations of bizarre conduct. It may well be that Dr. Reich questioned her about these items, but it does not appear

that she was otherwise advised of or knew the contents of the memoranda at the time or was given an opportunity to refute them. So, too, the record does not indicate that she was given a copy or informed of Dr. Reich's underlying medical findings upon which his ultimate conclusion of unfitness was based, or that she was afforded an opportunity to offer a countervailing medical opinion, whether in the form of a letter, a doctor's certificate or relevant medical information.[3] Her own doctor's conclusion, which is at odds with Dr. Reich's, was not acknowledged, and it is not known whether it was ever called to the latter's attention, much less considered by him.

Parenthetically, it is noted that the record presents a question with respect to the examining doctor. The statute referred to above provides that the examining doctor is to be designated by the state civil service department or municipal commission having jurisdiction. But here the Social Services Department itself designated Dr. Reich, a member of its own psychiatry staff.[4] This procedure, which, upon its face, appears contrary to the statutory requirement, may raise an issue of impartiality under the due process claim.[5]

Plaintiff's essential challenge to section 72 is that it authorizes the Social Services Department by which she has been employed for seven years under permanent civil service status to place her on involuntary leave of absence for up to one year upon certification by a medical officer that she is mentally unfit to perform her duties without providing fundamental procedural safeguards prior to effectuating the enforced leave, such as (1) adequate notice of the basic charges against her; (2) a reasonable opportunity to meet those charges; and (3) a fair hearing before an impartial trier of the facts at which she would be afforded an opportunity to present countervailing evidence, medical and otherwise, in resisting the charges.[6]

3. *Cf.* Morrissey v. Brewer, 408 U.S. 471, 487, 489, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972).

4. It is not without interest to note that the State Department of Civil Service, which apparently sponsored the present § 72 before the State Legislature, urged in support of its passage as one of the safeguards that "[t]he medical examination which would determine the fitness of an employee would be conducted not under the aegis of the appointing authority but, instead, by a physician selected by the State Civil Service Department or municipal civil service commission having jurisdiction." 2 McKinney's 1969 Session Laws of New York, p. 2400.

5. *Cf.* Morrissey v. Brewer, 408 U.S. 471, 485–486, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972); Goldberg v. Kelly, 397 U.S. 254, 271, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970); In re Murchison, 349 U.S. 133, 75 S.Ct. 623, 99 L.Ed. 942 (1955); Wong Yang Sung v. McGrath, 339 U.S. 33, 45–46, 70 S.Ct. 445, 94 L.Ed. 616 (1950). Although allegations of the unconstitutional administration in a particular case of an otherwise valid statute may not by themselves warrant the convening of a three-judge court (Phillips v. United States, 312 U.S. 246, 252–253, 61 S.Ct. 480, 85 L.Ed. 800 (1941); Astro Cinema Corp. v. Mackell, 422 F.2d 293, 297 (2d Cir. 1970)), once such a court is properly convened, it may hear all questions raised in the case. Lake Carriers' Ass'n v. Mac-Mullan, 406 U.S. 498, 504 n. 5, 92 S.Ct. 1749, 32 L.Ed.2d 257 (1972); Florida Lime & Avocado Growers v. Jacobsen, 362 U.S. 73, 80–81, 80 S.Ct. 568, 4 L.Ed. 2d 568 (1960); New York State Waterways Ass'n v. Diamond, 469 F.2d 419 (2d Cir., 1972).

6. § 72 has recently been considered by our Court of Appeals upon a claim that it violated an employee's rights of privacy, free speech and due process of law. Leonard v. Sugarman, 466 F.2d 1366 (2d Cir., 1972). The essential contention there was that before a § 72 order may even issue there must always be a preliminary adversary administrative hearing as to the justification for the medical examination. The court rejected the plea, which advanced grounds of constitutional infirmity other than those urged by the plaintiff here. Moreover, there plaintiff was served with a list specifying the basis of the order and plaintiff did "not seriously contest these charges." The court also noted that the section was subject to abuse and left "to another day whether a 'substantial' federal question would then be raised." The other day appears to have arrived in this case.

■ Whether public employment under permanent, as distinguished from provisional or non-tenured, civil service status is a "right" or a "privilege" is no longer an issue—the distinction has been "fully and finally" rejected by the Supreme Court.[7] So, too, we need not be concerned whether plaintiff asserts a "personal" or a "property" right, another dichotomy put to rest by the Supreme Court in the evaluation of procedural due process claims.[8] The narrow issue presented at this stage of the litigation is whether the nature of plaintiff's employment is such an "important interest"[9] that before the State may interfere with or otherwise interrupt it by an enforced absence of up to one year on the grounds of mental unfitness, she is entitled to notice of the charges and an opportunity to be heard in resisting them. Plaintiff urges that such an "important interest" is invaded because, in addition to the loss of income from her civil service job, enforced leave of absence for a period of up to one year on account of mental unfitness in practical terms forecloses other gainful employment[10] during that period and carries with it a stigma reflected in community attitude, a claim asserted by her.[11] In this context, since only the substantiality of the constitutional challenge is at issue, it is not necessary to consider the nature of the procedural rule, assuming one is warranted, that will satisfy due process requirements, which may vary in different cases depending upon the circumstances in each.[12]

■ The trend of recent Supreme Court rulings where "important interests" of litigants required that they be accorded procedural due process protection, such as Perry v. Sindermann,[13] (non-tenured college employment); Fuentes v. Shevin,[14] (repossession of household goods); Bell v. Burson,[15] (revocation of driver's license); Goldberg v. Kelly,[16] (welfare payments); Sniadach v. Family Finance Corp.,[17] (wage garnishment); Slochower v. Board of Education,[18] (discharge from public employment), indicates that plaintiff's attack upon section 72 is of substantial proportions. That the interference with plaintiff's gainful employment may be temporary—that is, less than a year—does not necessarily defeat the substance of her constitutional claim. The Supreme Court has recently observed: "[I]t is now well settled that a temporary, non-final deprivation of property is nonetheless a 'deprivation' in

---

7. Board of Regents v. Roth, 408 U.S. 564, 571, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); Graham v. Richardson, 403 U.S. 365, 374, 91 S.Ct. 1848, 29 L.Ed.2d 534 (1971).

8. Lynch v. Household Finance Corp., 405 U.S. 538, 92 S.Ct. 1113, 31 L.Ed.2d 424 (1972).

9. See Perry v. Sindermann, 408 U.S. 593, 599, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972); Board of Regents v. Roth, 408 U.S. 564, 576–577, 92 S.Ct. 2701, 33 L. Ed.2d 548 (1972); Fuentes v. Shevin, 407 U.S. 67, 89, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972); Bell v. Burson, 402 U.S. 535, 539, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971).

10. Cf. Cafeteria Workers v. McElroy, 367 U.S. 886, 898–899, 81 S.Ct. 1743, 6 L.Ed. 2d 1230 (1961).

11. Cf. Wisconsin v. Constantineau, 400 U. S. 433, 437, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971); Dale v. Hahn, 440 F.2d 633, 636 (2d Cir. 1971); see also Birnbaum v.

Trussell, 371 F.2d 672, 677 (2d Cir. 1966).

12. See Morrissey v. Brewer, 408 U.S. 471, 481, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972); Bell v. Burson, 402 U.S. 535, 540, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971); cf. Goldberg v. Kelly, 397 U.S. 254, 266–267, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970).

13. 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972).

14. 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972).

15. 402 U.S. 535, 539, 91 S.Ct. 1586, 29 L. Ed.2d 90 (1971).

16. 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed. 2d 287 (1970).

17. 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969).

18. 350 U.S. 551, 76 S.Ct. 637, 100 L.Ed. 692 (1956).

the terms of the Fourteenth Amendment. . . . The Fourteenth Amendment draws no bright lines around three-day, 10-day or 50-day deprivations of property." [19]

The State, however, contends, among other matters, that the section withstands constitutional challenge because subdivision 3 permits the Civil Service Commission to "conduct such inquiry as it deems necessary or desirable" in reviewing an employee's case, and that this is sufficiently broad and flexible to permit the employee to introduce any relevant evidence to rebut the finding of mental disability and to offer any medical report which differs from that of the agency's examining doctor. It also stresses that upon review the Commission shall provide for a medical examination by a doctor other than the one who originally examined the employee. However, plaintiff contends that this procedure is available only *after* action has already been taken which places her on leave of absence that may well extend through the entire year, and indeed, "the [Supreme] Court has traditionally insisted that whatever its form, opportunity for . . . hearing must be provided *before* the deprivation at issue takes effect." [20] [emphasis supplied]

■ Since the State's position in no respect eliminates the substance of the constitutional claims urged by the plaintiff, she is entitled to the convening of a three-judge court and this branch of her motion is granted. This disposition makes it unnecessary to consider at present plaintiff's other claims of constitutional infirmity. The plea for abstention is one to be decided by the three-judge court and not by the single judge. [21]

Needless to say, the finding that there is a substantial constitutional issue to be considered by a three-judge court is no forecast of the determination upon the merits of the claim so presented. [22]

## II

Plaintiff also seeks a temporary order directing her reinstatement pending final determination upon the merits of her claim by the three-judge court. She urges that since her constitutional claim is of substance, the balance of hardship tips in her favor and warrants the requested relief. [23] Her basic contention is that she is being deprived of a means of income save for that which she receives from friends and relatives; further, that by reason of her leave of absence status she suffers "a badge of inferiority and incompetency which unjustifiedly [sic] has been and is associated with mentally disabled persons"; finally, she argues that no harm will befall the defendants—a view sharply disputed by them.

■ Her claim must be balanced against countervailing considerations. In the event plaintiff ultimately prevails, she will of course be entitled not only to reinstatement, but to back pay —thus she will suffer no permanent economic loss. As to what she terms a "badge of inferiority and incompetency," the finding of the examining doctor is not a matter of public record, and that her leave of absence carries with it a stigma in this day is arguable. Finally, the charges upon which the leave of absence was ordered indicate that over an extended period plaintiff's actions and conduct were of a disruptive nature, and

---

19. Fuentes v. Shevin, 407 U.S. 67, 84–85, 92 S.Ct. 1983, 1996, 32 L.Ed.2d 556. (1972).

20. *Id.* at 82, 92 S.Ct. at 1995. *See also* Bell v. Burson, 402 U.S. 535, 542, 91 S. Ct. 1586, 29 L.Ed.2d 90 (1971); Boddie v. Connecticut, 401 U.S. 371, 379, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971); Wisconsin v. Constantineau, 400 U.S. 433, 437, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971); Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970).

21. New York State Waterways Ass'n v. Diamond, 469 F.2d 419 (2d Cir., 1972); Abele v. Markle, 452 F.2d 1121, 1125 (2d Cir. 1971).

22. *Cf.* A. T. Cross Co. v. Jonathan Bradley Pens, Inc., 470 F.2d 689 (2d Cir., 1972).

23. *Cf.* Sniadach v. Family Finance Corp., 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969); Hamilton Watch Co. v. Benrus Watch Co., 206 F.2d 738, 740 (2d Cir. 1953).

that efforts were made to "smooth over the situation," but to no avail. More important, however, the memoranda which led to the section 72 proceeding also expressed concern for the safety of staff members. It is true that Dr. Reich's conclusion that plaintiff is unable to perform the duties of her office is challenged by her own doctor, but on this record there is no basis for this court to reject Dr. Reich's judgment.

The court, on this motion, does not pass upon the verity of the charges which resulted in placing the defendant on leave of absence status; however, weighing the significant factors presented by the respective parties on this record, including the claim of disruptive conduct over an extended period, and the expressed concern for the safety of staff members, to order plaintiff's reinstatement before her claim is finally adjudicated would create a difficult and tense situation. It would result in a potential for interference with the normal functioning of a public office. Under the circumstances, the balance of hardship tips in favor of the defendants; accordingly, the motion for a temporary order directing plaintiff's reinstatement is denied.