Ellen P. McDONALD, et al., Plaintiffs,

v.

John McLUCAS, Acting Secretary of the Air Force, et al., Defendants.

No. 73 Civ. 3190.

United States District Court,
S. D. New York.

Aug. 6, 1973.

See also D.C., 371 F.Supp. 831.

Kaplan, Kilsheimer & Foley, New York City, for plaintiffs; Dermot G. Foley, R. Alan Stotsenburg, New York City, of counsel.

Paul J. Curran, U. S. Atty., S.D.N.Y., Foley Square, N. Y., for defendants; Howard S. Sussman, Naomi L. Reice, Asst. U. S. Attys., of counsel.

METZNER, District Judge.

Plaintiffs seek a preliminary and permanent injunction in this action for a judgment declaring Sections 555 and 556 of Title 37, United States Code, which govern the circumstances under which American servicemen missing in action may be declared dead, unconstitutional as violative of the due process clause of the Fifth Amendment. Jurisdiction is grounded on 28 U.S.C. § 1331.

This suit is being maintained as a class action on behalf of all next-of-kin of American servicemen who have been carried in a missing status (MIA) while on active duty in Indochina since January 1, 1962. Next-of-kin is defined by plaintiffs to include spouses, children, parents, brothers and sisters of MIAs. The defendants are the respective Secretaries of the Army, Navy and Air Force.

In count one plaintiffs contend that these statutes are unconstitutional on their face because they violate the due process clause of the Fifth Amendment in that (1) there are no statutory criteria to guide the Secretary in his determination of whether or not to make an official report of death or a presumptive finding of death; (2) there has been no statutory rule-making authority delegated to the Secretary with respect to findings of death; (3) there is no notice given to the next-of-kin regarding the pendency of a status review, nor any opportunity to be heard before a finding of death is made; and (4) the statutes permit the Secretary to make findings in the total absence of any evidence.

Count two alleges that the statutes are unconstitutional as applied because (1) no criteria or standards have been issued to guide the Secretary in making his determinations; (2) there is no procedure for giving notice and as a result, next-of-kin have been excluded from any participation in the review proceedings; (3) the Secretary does not "convene, conduct or participate in any hearing or review prior to making findings of death," and (4) the findings of death are being made in a total absence of any evidence.

The third count alleges that the defendants have been, and are now, acting in an arbitrary and capricious manner

in making findings of death because they have failed to "diligently search for or ascertain all available information" about the MIAs. As a result of this activity, defendants' findings of death are said to be based upon "pure speculation and guesswork."

The fourth count alleges that the findings of death made under Sections 555 and 556 are subject to the Administrative Procedure Act, 5 U.S.C. § 500 et seq., and that the defendants have failed to comply therewith, thus depriving plaintiffs of their statutory rights under the Act.

In the fifth count it is claimed that as a result of these findings of death, plaintiffs have been deprived of their constitutional rights as beneficiaries of the Paris Agreement of January 21, 1973 which ended the hostilities in Vietnam. Article 8(b) of that agreement provides:

> "The parties shall help each other to get information about those military personnel and foreign civilians of the parties missing in action, to determine the location and take care of the graves of the dead so as to facilitate the exhumation and repatriation of the remains, and *to take any such other measures* as may be required *to get information about those still considered missing in action.*" (Emphasis supplied)

By making findings of death, plaintiffs claim that the government is no longer obligated under the Paris Agreement *to require other parties thereto to furnish information about MIAs.*

Since this action seeks an injunction restraining the enforcement, operation or execution of an Act of Congress for repugnance to the Constitution, we must now consider whether a three-judge court should be convened to hear plaintiff's application. 28 U.S.C. §§ 2282, 2284.

■ In determining whether to convene a three-judge court, the initial inquiry is whether a substantial constitutional question exists. The substantiali-

ty prerequisite was last reviewed in Goosby v. Osser, 409 U.S. 512, 518, 93 S.Ct. 854, 858, 35 L.Ed.2d 36 (1973), in which the Court said:

> " 'Constitutional insubstantiality' for this purpose has been equated with such concepts as 'essentially fictitious,' . . . 'wholly insubstantial,' . . . 'obviously frivolous,' . '. . and 'obviously without merit,' . . . . The limiting words 'wholly' and 'obviously' have cogent legal significance. In the context of the effect of prior decisions upon the substantiality of constitutional claims, those words import that claims are constitutionally insubstantial only if the prior decisions inescapably render the claims frivolous; previous decisions that merely render claims of doubtful or questionable merit do not render them insubstantial for the purposes of 28 U.S.C. § 2281."

Turning to plaintiffs' facial attacks against the statutes, the government has conceded that substantial constitutional questions are presented requiring the convening of a three-judge court. I agree.

■ The Supreme Court has consistently held that due process under the Fifth Amendment requires some form of notice and opportunity to be heard in administrative proceedings when adjudications of fact are made, and when a person is deprived of a protected interest. *See,* Hannah v. Larche, 363 U.S. 420, 80 S.Ct. 1502, 4 L.Ed.2d 1307 (1960); Morgan v. United States, 304 U.S. 1, 58 S.Ct. 773, 82 L.Ed. 1129 (1938); Greene v. McElroy, 360 U.S. 474 (1959); *see also,* Board of Regents v. Roth, 408 U.S. 564, 570, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). There is obviously a property interest involved in the monthly payments that accrue while a serviceman is carried on a missing status. At this stage of the litigation, it is of course not necessary to consider the nature of the procedure, assuming one is warranted, that will satisfy the due process clause. *Cf.,* Snead v. Depart-

ment of Social Services, 351 F.Supp. 1360, 1365 (S.D.N.Y.1972).

■ We also note that when the Secretary's authority to make presumptive findings of death under Sections 555 and 556 is coupled with the alleged lack of notice and opportunity to be heard, the effect of the statutory scheme appears to create an irrebuttable presumption of death. This in itself raises a substantial constitutional question since the Supreme Court has traditionally held that irrebuttable presumptions which act to deprive persons of protected interests violate the due process clause of the Fifth Amendment. *See*, Heiner v. Donnan, 285 U.S. 312, 329, 52 S.Ct. 358, 76 L.Ed. 772 (1932); *cf.*, Dunn v. Blumstein, 405 U.S. 330, 350, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972); ·Carrington v. Rash, 380 U.S. 89, 96, 85 S.Ct. 775, 13 L.Ed.2d 675 (1965).

One of the grounds urged that the statutes are unconstitutional on their face is that they provide for delegation of legislative power devoid of any standards. Defendants urge that this argument is foreclosed by previous decisions which have held that Congress need not make specific standards for each subsidiary executive action in carrying out a policy. Carlson v. Landon, 342 U.S. 524, 542, 72 S.Ct. 525, 96 L.Ed. 547 (1952); *see also* Yakus v. United States, 321 U.S. 414, 424–425, 64 S.Ct. 660, 88 L.Ed. 834 (1944).

Plaintiffs in turn rely on A.L.A. Schechter Poultry Corp. v. United States, 295 U.S. 495, 55 S.Ct. 837, 79 L. Ed. 1570 (1935) and Panama Refining Co. v. Ryan, 293 U.S. 388, 55 S.Ct. 241, 79 L.Ed. 446 (1935), which are the only two cases ever to invalidate Congressional delegations of power to administrative or executive agencies.

While it is true that recent decisions have rejected attacks based on the ground that the statutes did not contain a policy or standard to guide an administrator in carrying out the mandate of the Act, it does not follow that these decisions render plaintiffs' claim here

"inescapably frivolous." Goosby v. Osser, *supra*. At most, the claim becomes "doubtful" or "questionable," which *Goosby* teaches is sufficient to cause the issue to be determined by a three-judge court. *See also*, K. Davis, Administrative Law Text ¶ 2.09 at 48 (1972); Holmes v. New York City Housing Authority, 398 F.2d 262, 265 (2d Cir. 1968); Hornsby v. Allen, 326 F.2d 605, 610 (5th Cir. 1964).

■ Having concluded that a three-judge court must be convened to consider the facial attacks against these statutes, it is also appropriate for that body to hear and determine, if necessary, plaintiffs' claim under count two that the statute is being unconstitutionally applied. *See, e. g.*, Department of Employment v. United States, 385 U. S. 355, 357, 87 S.Ct. 464, 17 L.Ed.2d 414 (1966).

■ We turn briefly to the remaining three counts in the complaint. Count three claims that the defendants have acted, and are continuing to act, arbitrarily and capriciously in making findings of death. Whatever remedy may exist to examine such a charge, it is one which is clearly· not available to these plaintiffs who represent MIAs as to whom findings of death have not as yet been made. Furthermore, because of this fact, these plaintiffs may not maintain a class action for relief under this count. Consequently, count three must be dismissed.

■ Plaintiffs' claim as to the applicability of the Administrative Procedure Act (APA) is similarly without merit. The language of the APA itself makes it clear that it does not apply. Section 553 thereof, dealing with rule making, provides that it is inapplicable "to the extent that there is involved—(1) a military or foreign affairs function of the United States," or "(2) a matter relating to . . . public property, loans, grants, benefits, or contracts."

Section 554 which deals with adjudications provides that it shall apply "in every case of adjudication required by

statute to be determined on the record after opportunity for an agency hearing." The courts have construed this section to have no application unless Congress has expressly provided for a hearing in the questioned statute, which it of course has not done here. *See, e. g.*, Sisselman v. Smith, 432 F.2d 750, 754 (3d Cir. 1970). In addition, Section 554 is also inapplicable to cases involving "the conduct of military or foreign affairs." Consequently, count four must be dismissed.

■ We come now to the fifth count of the complaint which alleges what appears to be third party beneficiary rights under the "Paris Agreement" of January 27, 1973, which ended the hostilities in Vietnam. It is not quite clear from the papers submitted on this application for a preliminary injunction what the legal position of these plaintiffs is with regard to this count. In the short time available for determination of this motion, the court has not been able to conduct research in depth as to the domestic legal effect of this executive agreement.

Suffice it to say, there do not appear to be any constitutional issues involved in this count. If the statutes are unconstitutional, then these plaintiffs have achieved all they need to vindicate their position. If the statutes are constitutional, then the only question is whether there is a conflict between the statutes and the Paris Agreement which would justify judicial intervention on behalf of the plaintiffs. Such an issue, however, does not raise a constitutional question.

Furthermore, the resolution of this issue need not be made now since it will not render unnecessary a determination of the constitutional issues by the three-judge court. *Cf.*, Norton v. Richardson, 352 F.Supp. 596, 599 (D.Md. 1972).

Pending the determination by the three-judge court to be convened for the purpose of determining the constitutional issues submitted herein, a temporary restraining order is hereby issued. 28 U.S.C. § 2284(3). I find that the plaintiffs, all of whom have next-of-kin missing in action and as to whom findings have not as yet been issued, will obviously suffer irreparable harm if the administrative proceedings are permitted to continue as presently conducted.

This restraining order shall apply to all members of the Army, Navy, Marines and Air Force who were, on July 20, 1973, in a "missing status" as that term is defined in 37 U.S.C. ch. 10, to the extent only that such member was officially carried or determined to be in a missing status while in Indochina. Each such member is hereinafter referred to as an "MIA."

So long as this order shall remain in force, defendants shall not, either personally or by their designees, make any official report of death or any finding of death with respect to any MIA, pursuant to 37 U.S.C. §§ 555 or 556, except that:

(1) Defendants may proceed under the Sections 555 and 556 of 37 U.S.C. as to any MIA if they receive from the primary next-of-kin a request in writing that they not delay action on the information in their possession.

(2) Defendants may continue or initiate any activity for the purpose of obtaining information about any MIA.

(3) Defendants may communicate any information so obtained now in their possession or hereafter acquired.

(4) Defendants may respond to any unsolicited inquiry from any family of any MIA not related to the allegations or merits of this action.

(5) Defendants may deliver the possessions or remains of any MIA to the primary next-of-kin.

So ordered.