Littleton, Judge,
delivered the opinion of the court:
The plaintiff, an officer in the U. S. Army, seeks to recover additional allowances in the amount of $5,233.80, upon the ground that his mother was dependent upon him for her chief support, within the meaning of the statutes relating to such allowances. The period of the claim is from December 8, 1941, to November 30, 1945. From the beginning of the period of plaintiff’s claim for the additional allowances to June 16, 1942, the Act of June 10, 1922 (42 Stat. 625), was the statute applicable to such allowances. The applicable provisions of this statute, as amended by the Act of May 31,1924 (43 Stat. 250), were sections 4, 5 and 6. For the period of the claim from June 16,1942, to November 30, 1945, the applicable provisions of the statutes are contained in sections 4, 5 and 6, of the Pay Readjustment Act of 1942 (56 Stat. 359) and Sections 1 (c) and 10 of the Missing Per *784 sons Act of March 7,1942 (56 Stat. 143), as amended by the Act of July 1,1944 (58 Stat. 679, 680-81).
The facts relating to plaintiff’s claim and to the dependency of his mother upon him for her chief support are set forth in the findings. The Act of March 7,1942, as amended, supra, provided, in so far as here material, in Section 1 (c) and Section 10, as follows:
(c) term “dependent” shall be as defined in United States Code, Title 37, sections 8 * * * [Same as the Act of June 10,1922, 42 Stat. 625] or such dependent as has been designated in official records; * * *
Sec. 10. The determination of the fact of dependency under the provisions of this Act, and the determination of the fact of dependency under the provisions of any and all other laws providing for the payment of pay, allowances, or other emoluments to enlisted men of the Army, Navy, Marine Corps, and Coast Guard of the United States where such payments are contingent upon dependency, shall be made by the head of the department concerned, or by such subordinate as he may designate, and such determination so made shall be final and conclusive: * * *
The plaintiff was in a beleaguered and prisoner of war status from December 8, 1941, through September 6, 1945, and was therefore subject to the provisions of the Missing Persons Act, supra.
After much consideration of the plaintiff’s claim for the additional allowances in question by the Chief of Finance of the U. S. Army, the Comptroller General, and by the Army Finance Center, under the applicable provisions of the statutes, the Army Finance Center denied plaintiff’s claim on July 31, 1950, under the Missing Persons Act, for the period December 8, 1941, through November 30, 1945. The question presented in this case is one of fact and the statute requires' that the officer claiming the allowances must establish that his mother was in fact dependent upon him for her chief support during the period covered by the claim. Each case must be decided upon its own facts and circumstances, Odlin v. United States, 74 C. Cls. 633, 636.
We are of the opinion that the decisions of the Comptroller General and the Army Finance Center denying the plaintiff’s *785 claim are supported by the facts and circumstances disclosed by the record in this case; and that such facts when considered as a whole in the light of the provisions of the applicable statutes, sustain the finding of the Commissioner of this court, which we have adopted as the finding of the court, that during the period of the claim the plaintiff’s mother was not dependent upon him for her chief support.
Plaintiff is not therefore entitled to recover, and his petition is dismissed.
It is so ordered.
Howell, Judge; Madden, Judge; Whitaker, Judge; and Jones, Chief Judge, concur.
FINDINGS OF FACT
The court makes findings of fact, based upon the evidence, the report of Commissioner Paul H. McMurray, and the briefs and argument of counsel, as follows:
1. The plaintiff, Loyd E. Mills, of Lawton, Oklahoma, was commissioned in the Officers’ Reserve Corps, U. S. Army, July 13, 1939, and entered upon active duty February 14, 1940, as a Second Lieutenant. He held the grade of First Lieutenant from December 8, 1941, to December 18, 1941; the grade of Captain from December 19, 1941, to September 1,1945; and the grade of Major from September 2,1945, to November 30, 1945. A Class E Allotment in the amount of fifty dollars was taken out by him in March 1942 on behalf of his mother, Mrs. Florence M. Mills.
2. The plaintiff was reported as beleaguered in the Philippine Islands from December 8, 1941, to April 8, 1942; a prisoner of war from April 9, 1942, through September 6, 1945, and returned to military control September 7, 1945.
3. Arrears of pay for the period December 1,1941, through November 30,1945, were settled on Voucher No. 1602, December 1945, accounts of W. L. Lonsdale, Jr., Second Lieutenant, FD, Borden General Hospital. No allowances for rental or subsistence were included in this settlement.
4. On or about December 12,1945, the plaintiff submitted a voucher for subsistence and rental allowances for the period December 1,1941, through November 30, 1945, as an *786 officer with a dependent mother, to the Finance Officer at the Borden General Hospital, Chickasha, Oklahoma.
The Finance Officer did not effect payment of the voucher but on December 12,1945, forwarded it to the Fiscal Director, 8th Service Command, Dallas, Texas, who forwarded it on December 20, 1945, to the Fiscal Director, Army Service Forces, Washington, D. C., in view of the “increasing number of claims for retroactive allowances on account of dependent mother or father which has been noted.”
5. The claim was returned to the 8th Service Command, February 1, 1946, directing that, since certificate legislation became effective December 8, 1941, separate claims should be submitted for the periods December 1, 1941, through December 7, 1941, and December 8, 1941, through November 30, 1945. This request was complied with on February 6,1946.
6. The claim was forwarded to the Director of Fiscal Division, Borden General Hospital, March 18, 1946, for verification or correction of one of plaintiff’s certificates submitted in support of the voucher. The certificate for September 1944 had stated that his mother’s income from all sources, with the exception of amounts received from the plaintiff, was eighty dollars per month.
The certificate for September 1944 was changed to read thirty dollars per month rather than eighty dollars and the claim was resubmitted on March 26,1946.
7. The claim was again returned May 22,1946, to the Fiscal Director, 8th Service Command, for the furnishing of information regarding the manner in which an additional thirty dollars per month was contributed by the plaintiff during the period of his claim. When the plaintiff entered a casualty status he had in effect a Class E Allotment of fifty dollars per month payable to his mother. This amount was not increased during the plaintiff’s casualty status; however, he had alleged in his certificate that he had contributed eighty dollars per month toward the support of his mother.
In compliance with the request from the Chief of Finance, the plaintiff submitted a certificate on June 12, 1946, to the effect that, during the period of his claim, his mother drew *787 on his bank account to the extent of approximately thirty dollars per month.
8. On June 25, 1946, the claim was forwarded by the Finance Officer, 4th Army to the Chief of Finance, Washington, D. C.
On September 10, 1946, the claim was returned to the Finance Officer, 4th Army, for preparation of monthly certificates setting forth the actual amounts drawn from the officer’s bank account each month by his mother and a statement as to the arrangements made with the bank to permit these checkages against the officer’s account over such a protracted period of time.
9. On December 6,1946, the plaintiff resubmitted his claim advising the Chief of Finance that an agreement was made with a Mrs. Coral F. Penley, Paris, France, (Plaintiff’s alleged sister) that if additional money was required by Mrs. Florence M. Mills, plaintiff’s mother, for her support, such funds would be advanced by Mrs. Penley, who would be reimbursed by the plaintiff upon his return to military control.
10. On January 16,1947, the Chief of Finance forwarded the claim to the Claims Division, General Accounting Office, for consideration of the propriety of payment in view of the apparent conflicting statements made by plaintiff in his submissions of December 6, 1946, and June 12, 1946.
On March 10,1947, the claim was forwarded by the General Accounting Office, Claims Division, to the Army Finance Center, St. Louis, Missouri, for consideration under the provisions of the Act of March 7,1942, Missing Persons Act.
11. On September 8,1947, settlement in the amount of one thousand four dollars and fifty cents ($1,004.50) for subsistence allowance as an officer without dependents for the period December 1, 1941, through November 30, 1945, was effected on Voucher No. 24776, September 1947, accounts of S. H. Smith, Lieutenant Colonel, FD, Symbol Number 210-684. This settlement was made on a separate voucher which had been submitted to the Chief of Finance and was transmitted by the Chief of Finance on January 16,1947, to the Army Finance Center, St. Louis, Missouri. At that time the claim for the increased allowances on account of a dependent mother was still pending.
*788 12. Subsequent to the settlement referred to in Finding No. 11, the plaintiff at various times submitted to the Army Finance Center (St. Louis) additional affidavits in support of his claim. He also submitted a revised certificate for the entire period of his claim which he intended as a substitute statement to supersede all previous certificates on the ground that, at the time of their prior submission, he was mentally unstable as a result of his prisoner of war experiences and was forced to rely on the advice of the personnel of the Borden General Hospital assigned to assist him in the preparation of his pay account. In this last certificate his mother’s average monthly living expenses were certified to have been approximately seventy-nine dollars which expenses were set out as follows:
Kent_____________________________________________$40.00
Food_____________________________________________ 15.00
Utilities------------------------------------------ 10. 00
Clothing__________________________________________ 5. 00
Medical Expense---------------------------------- 5.00
Insurance________________________________________ 2. 00
Amusement_______________________________________ 2.00
Total_______________________________________ 79.00
In this certificate it was further certified that his mother’s income, derived from a Spanish-American War Widow’s Pension, was thirty dollars per month for the period prior to May 1944, and increased thereafter to forty dollars per month.
13. On May 12,1948, the claim was forwarded to the Chief of Finance for consideration of the recommendation of the Army Finance Center, St. Louis, Missouri, that the claim be paid through March 31,1944, and denied for the balance of the period. On or about July 8,1948, the plaintiff advised the St. Louis Office that he had appeared before the Chief of Finance with regard to his claim and was informed that a certificate from a medical officer, concerning his physical and mental condition upon his return to the United States following his release as a prisoner of war, would be required to support his claim. A statement from Doctor Ralph W. Hubbard, who had been a prisoner of war with the plaintiff and knew him at that time, was submitted to and forwarded *789 by the St. Louis office to the Chief of Finance on July 13, 1948.
14. On July 26, 1948, the Chief of Finance advised the Army Finance Center at St. Louis that the certificate of Doctor Hubbard was insufficient in that he was not a member of the Medical Staff at Borden General Hospital and suggested that the plaintiff secure a proper certificate from a medical officer who was on duty at the hospital during the time he was a patient there. On November 9,1948, a medical certificate, signed by Doctor Wilfrid John Lewis, M. D., was submitted by the plaintiff.
15. On or about February 8,1949, the claim was submitted to the Comptroller General by the Army Finance Center for an advance decision as to the propriety of payment.
By letter dated August 29, 1949, the General Accounting Office requested the plaintiff to furnish supporting material for the claimed period from February 14,1940, to December 1, 1941. In answer thereto, an affidavit of plaintiff’s mother and the statement from a grocer in Lawton, Oklahoma, to the effect that the average expenditure for groceries in his store was $18.00 per month, were furnished. Plaintiff also submitted his own statement explaining the delay in filing a claim for the period from December 8,1941, to November 30, 1945. On November 9, 1949, the General Accounting Office wrote to plaintiff requesting supplemental information to explain many discrepancies in his statement. Plaintiff submitted an answer thereto by certificates and several attached affidavits of local merchants in the Lawton, Oklahoma, area.
16. On March 15,1950, the Comptroller General’s Office in decision B-83886 informed the plaintiff that his claim for increased allowances on behalf of a dependent parent for the period February 14, 1940, through December 7, 1941, prior to his entry into a casualty status, was disallowed in view of the “general confusion and uncertainty as to your mother’s dependency status; the utter lack of concrete evidence of contributions by you to her support * * Claim for the period December 8, 1941, through November 30, 1945, was forwarded by the Comptroller General to the Army Finance Center (St. Louis) since it involved a period *790 under the Missing Persons Act. On July 31, 1950, the plaintiff was informed by the Finance Center at St. Louis that his claim for increased allowances during the period he was in a casualty status could not be favorably considered, pointing out, in effect, that the bases for the conclusions reached by the Comptroller General, with respect to the dependency status of his mother during the prior period, were also applicable for the period of his casualty status.
17. It has been stipulated by the parties to this action that “plaintiff’s inconsistencies in his applications and affidavits in support of said claim for subsistence and rental allowances were due to his mental and physical condition as a result of his long period of confinement in a Japanese concentration camp.”
18. Beginning in December 1941, Mrs. Mills lived at 701 Euclid Street in Lawton, Oklahoma, in a rented six-room house. The rent for that house ($40.00 per month) was paid through the summer of 1942 by Lieutenant Brewer, son-in-law of Mrs. Mills, who, with his wife, was living in the house.
After the Brewers left Lawton, Oklahoma, in December 1942, Mrs. Mills rented space in the house to Major and Mrs. Bumbaum at seventy-five dollars per month for the period of three months. The house was sold in April 1943, and Mrs. Mills moved to another house on Columbia Street in Lawton, where she paid a rental of fifty dollars per month but rented a room plus kitchen privileges to a Mr. Ford and his wife for enough to pay the house rent. This was for a period of three months. The couple left when the daughter of Mrs. Mills and her son-in-law, Lt. Brewer, came back to Lawton in September 1943. In December 1943, Mrs. Mills, with her son-in-law and daughter, moved to Cache Boad, west of Lawton, where the rent was seventy-five dollars per month. The Brewers paid fifty dollars per month toward the rent and Mrs. Mills paid twenty-five dollars of this expense until April 1944 when Lieutenant Brewer and his wife moved to Camp Davis, N. C.
In June 1944, Mrs. Mills went to live with her daughter, who was ill and needed assistance, at the army camp in North *791 Carolina. Mrs. Mills did not pay any room and board, as such, while there but spent money for her daughter and her grandchildren during this period. She remained with her daughter in North Carolina until the son-in-law was transferred August 1944 to North Camp Hood, Temple, Texas. She went with them to Temple, Texas, and served as a nurse for her daughter’s baby, who was born in September 1944, at McClasky Army Hospital. About three weeks after the baby was bom, Mrs. Mills entered the same hospital as a patient for an operation where she remained thirty-two days and paid one dollar;per day (board). After leaving the hospital in November 1944, Mrs. Mills visited her sister for three weeks in El Eeno, Oklahoma, where her sister paid all the expenses incident to the visit. At the expiration of this visit Mrs. Mills went to Fort Ord, California, to again live with her daughter and Lieutenant Brewer, where she remained until her son, the plaintiff, came back from overseas. According to the testimony of Mrs. Mills, she paid “her own expenses” while at Fort Ord.
19. The total income received by Mrs. Mills from all sources during the period December 8, 1941, to November 30, 1945, was in excess of $4,500.00. This figure is arrived at without placing any monetary value upon any benefits which may have accrued to her during the period of time she lived almost continuously with Lieutenant and Mrs. Brewer from June 1944 to the date her son came back from overseas in the fall of 1945. The total amount received from her son during the same period was $2,150.00.
20. If it should be determined that the plaintiff is entitled to prevail in this suit, it is agreed by both plaintiff and defendant that the amount recovered should be as follows:
Additional subsistence allowance________________$1,063.30
Rental allowance------------------------------- 4,170.50
Total____________________________________ 5,233. 80
21. The evidence presented fails to establish that Mrs. Florence Mills, mother of the plaintiff, was, in fact, depend-ant upon the plaintiff for her chief support within the meaning of the Act of June 16, 1942, 56 Stat. 361, during the period involved in this claim.
*792 CONCLUSION OF LAW
Upon the foregoing findings of fact which are made a part of the judgment herein, the court concludes as a matter of law that plaintiff is not entitled to recover, and his petition is therefore dismissed.
Judgment is rendered against plaintiff for the cost of printing the record herein, the amount to be entered by the clerk and collected by him according to law.