Velma L. CRONE et al.

v.

The UNITED STATES.

No. 293–74.

United States Court of Claims.

July 9, 1976.

[a] member of a uniformed service who is on active duty * * *, and who is in a missing status, is * * * for the period he is in that status, entitled to receive or have credited to his account the same pay and allowances * * * to which he was entitled at the beginning of that period or may thereafter become entitled. * * *

Continuance of full pay and allowances is required for so long as the serviceman "can reasonably be presumed to be living" and is maintained in MIA status. 37 U.S.C. §§ 552(e), 555(a)(1). Section 553 authorizes the Secretaries of the military departments, or their designees, as appropriate, to initiate, continue or increase allotments of such pay and allowances for the support and benefit of the dependents or designated beneficiaries of MIAs.

Entitlement of an MIA to pay and allowances, and of his dependents to appropriate allotments therefrom, terminates on the date when such MIA becomes the subject of either an official report or presumptive finding of death under Section 556(b). 37 U.S.C. §§ 552(b), 555(b)(1). During the period May 1970 to June 1973, the pay and allowances of each of the MIAs involved in this action were discontinued pursuant to official determinations of death. During this same period, allotments of such pay and allowances to two of the plaintiffs herein, Patricia Heideman and Susan Sullivan, who are or were the dependents of MIAs, were similarly discontinued.

Plaintiffs seek to maintain this suit as a class action on behalf of a general class and a sub-class. Plaintiffs Velma L. and Paul E. Crone, Marjorie J. Pickett, Ivan and Betty Wiley, Adeline B. and Norman P. Westwood, Sr., and Mildred L. and Raymond J. Lodge, as parents of the former MIAs, request certification of a general class comprising all "next-of-kin of the MIA's who were the subjects of * * * determinations of death, [suing] not on their own behalf but on behalf of the MIA's whom they represent as next friends." Plaintiffs Susan Sullivan and Patricia Heideman, as wives of the former MIAs, request certifica-

Dermot G. Foley, New York City, atty. of record, for plaintiffs. Kaplan, Kilsheimer & Foley, R. Alan Stotsenburg, Michael Hausfeld, and Jerry S. Cohen, Washington, D. C., of counsel.

Susan M. Linden, Washington, D. C., with whom was Asst. Atty. Gen. Rex E. Lee, Washington, D. C., for defendant. Rose E. Adewale-Mendes, Frank A. Luna, David P. Schulingkamp, and Richard Stearns, Washington, D. C., of counsel.

Before COWEN, Chief Judge, and DAVIS and KUNZIG, Judges.

## ON DEFENDANT'S MOTION AND PLAINTIFFS' CROSS–MOTION FOR SUMMARY JUDGMENT

COWEN, Chief Judge, delivered the opinion of the court:

This suit challenges the validity of certain "official reports of death" and presumptive "findings of death" made by the Secretaries of the Army, Navy and Air Force, or their designees, pursuant to the Missing Persons Act, ch. 166, 56 Stat. 143 (1942), as amended, 37 U.S.C. §§ 551–57. Plaintiffs are the parents and spouses of seven American servicemen who were placed in missing-in-action (MIA) status during the Vietnam War and who, since May 1970, have been the subjects of such determinations of death, although their remains have never been recovered.

We have jurisdiction of this suit pursuant to 28 U.S.C. § 1491. Plaintiffs claim monetary relief under 37 U.S.C. §§ 552 and 553. Section 552(a) provides that

tion of a sub-class comprising "those members of the general class who, as dependents * * * and/or the designated beneficiaries of their respective MIA's seek recovery of monetary damages which they personally sustained as a result of such * * * determinations of death." Plaintiffs seek voidance of the death determinations, restoration of the servicemen involved to MIA status, and back pay and allowances for the period running from the date of each respective determination of death.[1]

Three principal questions are presented by the parties' cross-motions for summary judgment: (1) whether those plaintiffs who purport to sue solely as "next friends" of the former MIAs have standing to maintain this action; (2) whether those plaintiffs with standing may maintain their suit as a class action; and (3) whether the determinations of death, because concededly made without affording prior notice and hearing to adversely affected parties and because allegedly made arbitrarily and capriciously, in the absence of standards and adequate evidence, should be held void *ab initio*. We answer all three questions in the negative. Accordingly, we deny plaintiffs' cross-motion and grant defendant's motion for summary judgment as to all plaintiffs except Patricia Heideman and Susan Sullivan, whose claims are remanded to the Trial Division for further proceedings consistent with this opinion.

1. Plaintiffs contend, citing *American Pipe & Constr. Co. v. Utah,* 414 U.S. 538, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974) and *Eisen v. Carlyle & Jacquelin,* 417 U.S. 156, 176 n. 13, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974), that all claims based on determinations of death subsequent to July 19, 1967, should not be time-barred, since plaintiffs were unnamed members of the general class of MIA next-of-kin which sought certification to challenge the same statutory scheme in *McDonald v. McLucas,* 371 F.Supp. 837 (S.D.N.Y.1973) (three-judge court convened), notwithstanding the *McDonald* court's denial of class certification and elimination of the instant plaintiffs from that suit for failure to be properly represented by a named party. 371 F.Supp. 831, 833 (S.D.N.Y.), *aff'd mem.,* 419 U.S. 987, 95 S.Ct. 297, 42 L.Ed.2d 261 (1974). Since we deny plaintiffs' request for class status in the instant case, and since none of the instant claims (all of which arose since

## I

### Facts[2]

1. *Plaintiffs Velma L. Crone and Paul E. Crone*

Plaintiffs Velma and Paul Crone are the parents of Specialist (SP4) Donald E. Crone, who was placed in MIA status on February 15, 1971, when the CH–47 "Chinook" helicopter in which he was flying as crew chief on a combat resupply mission crashed into enemy-held territory in Laos. In connection with an investigation, conducted pursuant to Army Regulations (AR) 600–10, Chap. 3, para. 31b, of the circumstances surrounding the crash, several sworn statements were filed.

Lieutenant Colonel (Lt. Col.) William N. Peachey, who was piloting an aircraft in the vicinity of the CH–47 and witnessed the crash, stated:

At that time the sling load, carried by the CH–47, burst into flames. Seconds later the aircraft burst into flames and exploded. The aircraft exploded at an approximate altitude of 2500 feet above the ground. I flew over the wreckage at approximately 100 feet and could see no survivors. I was forced to depart the area because of enemy fire. In my opinion there could have been no survivors.

No ground search was conducted of the crash site. On March 5, 1971, a Missing Persons Board of Inquiry recommended

May 1970) would otherwise be barred by our statute of limitations, 28 U.S.C. § 2501, we need not reach this question.

2. The facts which follow are primarily drawn from the Government's briefs and submissions, including official military records. Plaintiffs do not dispute these facts per se, but contend that, in the absence of discovery, they have been unable to secure additional material evidence still in the Government's possession. We find the facts as here set forth sufficient for purposes of our instant disposition of this case. However, in view of our decision to remand the claims of plaintiffs Patricia Heideman and Susan Sullivan to the Trial Division of this court for a de novo trial on the merits of their claims, plaintiffs will have ample opportunity at that time to introduce such new and additional evidence as may be relevant to that proceeding.

that the status of SP4 Crone, and of the five other members of the helicopter crew, be changed from MIA to killed-in-action. On March 30, 1971, Division Headquarters, U.S. Army, Vietnam, concurred in the recommendation and, on April 10, 1971, the recommendation was approved by Order of the Secretary of the Army. During the period February 15, 1971 to April 10, 1971, the date evidence of death was officially received by the Army, SP4 Crone was carried in MIA status and his pay and allowances were credited to his account pursuant to 37 U.S.C. § 552. The remains of SP4 Crone were not recovered.

## 2. *Plaintiff Marjorie J. Pickett*

Plaintiff Marjorie Pickett is the mother of Corporal (Corp.) Robert E. Grantham, who was placed in MIA status on March 8, 1971, when the aircraft in which he was flying as a crew member crashed in Vietnam. In connection with an investigation, conducted pursuant to AR 600–10, several sworn statements were filed.

Warrant Officer James E. Davey, who witnessed the crash from a nearby aircraft, stated:

> Upon impact the LOH exploded into flames. Once I reached the area I did two tight orbits over the burning LOH looking for any personnel that might have survived the crash. Not seeing anyone I moved my aircraft in a few feet away from the wreckage and hovered. I instructed my crew to look for any survivors. Concerned about being a good target. I took off and did one more orbit around the area and approached it again. I hovered a few feet above the aircraft for approximately 45 seconds. No one in my crew could spot any bodies or any survivors. The aircraft had completely come apart and was in small burning pieces. While I was hovering the AK–1G said that I was taking fire and I departed the area.

The remains of Corp. Grantham were not recovered. From March 8, 1971, the date of the crash, to May 14, 1971, when evidence of death and the recommendation of the board of inquiry were received by the Army, Corp. Grantham was carried in MIA status and pay and allowances were credited to his account pursuant to 37 U.S.C. § 552.

## 3. *Plaintiffs Ivan Wiley and Betty Wiley*

Plaintiffs Ivan and Betty Wiley, are the parents of SP4 Richard Denis Wiley, who was placed in MIA status on June 12, 1972, following the crash of his aircraft in Vietnam. In connection with an investigation of the circumstances surrounding his MIA status, pursuant to AR 600–10, several sworn statements were filed.

Warrant Officer Thomas E. Martin, who survived the crash, stated:

> The aircraft took .30 caliber antiaircraft fire. * * * [It] turned 180° upon hitting trees, tumbled backwards several times. I could get out. SP4 Wiley's legs were caught under the roof after the aircraft came to rest on its right side. [The aircraft] exploded causing SP4 Wiley to be killed. While on the ground we took heavy small arms fire. I tried to get SP4 Wiley out of the aircraft. * * *

The remains of SP4 Wiley were not recovered. During the period June 12, 1972, the date of the crash, to August 26, 1972, when evidence of death and the recommendation of the board of inquiry were received by the Army (which then issued a report of death under 37 U.S.C. § 556(b)), SP4 Wiley was carried in MIA status and pay and allowances were credited to his account pursuant to 37 U.S.C. § 552.

## 4. *Plaintiffs Adeline B. and Norman P. Westwood, Sr.*

Plaintiffs Adeline and Norman Westwood, Sr., are the parents of Lieutenant (Lt.) Norman Philip Westwood, Jr., who was placed in MIA status [3] on May 17, 1970,

---

**3.** Defendant contends that "[s]ince Lt. Westwood's death was determined by the local commander within hours of his loss, he never entered a missing status under 37 U.S.C. § 551 *et seq.*, and no determination of death as envisioned by that statute was even made by the

when the aircraft he was piloting on a night bombing mission crashed at sea shortly after its catapult launch from the USS CORAL SEA. The Navy received and approved a report of death on May 18, 1970, from the Commanding Officer, USS CORAL SEA, which stated:

(2) Search for missing pilot of F4–B, Lt. Norman Philip Westwood, Jr., * * was terminated at 0900 H, 18 May 70. Crash site was vividly marked and definitely established by fuel fire on surface of the water. * * * Area was thoroughly searched using ships' motor whale boat and search and rescue helicopters. Results were negative.

(3) It is thus considered that the pilot was lost at sea and died in the line of duty as a result of the aircraft accident. His body was not recovered.

### 5. *Plaintiff Patricia Heideman*

Plaintiff Heideman is the wife of Master Sergeant (M. Sgt.) Thomas E. Heideman, who was allegedly placed in MIA status on October 24, 1970, when the CH–3 "Chinook" helicopter in which he was flying as flight engineer crashed during a mission over Laos. Within 24 hours of the crash, an official report of death was received and approved by the Air Force. M. Sgt. Heideman's remains were not recovered.

### 6. *Plaintiffs Mildred L. and Raymond J. Lodge*

Plaintiffs Mildred and Raymond Lodge are the parents of Major Robert A. Lodge, who was placed in MIA status on May 10, 1972, when the F–4 aircraft he commanded was hit by enemy fire and crashed during a combat patrol mission near Hanoi, North Vietnam. Major Lodge's remains were not recovered. The official report of death, approved by the Air Force pursuant to 37

U.S.C. § 556(b) on May 9, 1973, states in pertinent part as follows:

1.d. * * * Captain Locher ejected at approximately 4,000 feet. Upon his ejection, his helmet rotated over his eyes and he was unable to see for five or ten seconds. When he was able to straighten his helmet, he noticed an air-to-air missile explode about one mile behind him. When he looked down on the ground, he saw their aircraft burning. He looked for Major Lodge's parachute but could not find it. During his period of evasion he found no evidence which would help to establish the fate of his aircraft commander. * * *

e. Examination of available records and reports pertaining to the status of Major Lodge discloses no information that he has been seen or heard from since the beginning of his missing in action status. There has been no accounting of him from the North Vietnamese government or its allies, and no information pertaining to him has been obtained from any other source.

### 7. *Plaintiff Susan Sullivan*

Plaintiff Sullivan is the wife of Lt. Col. Farrell J. Sullivan, who was placed in MIA status on June 27, 1972, when the F–4 aircraft he commanded was hit by a surface-to-air missile and crashed during a strike mission over Hanoi, North Vietnam. Lt. Col. Sullivan's remains were not recovered. The official report of death, approved by the Air Force on or about June 22, 1973, pursuant to 37 U.S.C. § 556(b), states in pertinent part that:

2.a. * * * Captain Francis had the feeling that the aircraft was being engulfed in flames and elected to eject about three seconds after it was hit. Col. Sullivan did not say anything during this time. While descending in his parachute,

Navy." Plaintiffs, however, argue that Lt. Westwood was placed in MIA status *prior* to issuance of any official report of death since, *inter alia,* a telegram was sent to plaintiffs Westwood on May 18, 1970, the day following the crash, which states: " * * * your son Lt. Norman Philip Westwood, Jr., * * *

was reported missing on 17 May 1970, at sea as the result of an aircraft accident." Since we conclude, in Part II of this opinion, that plaintiffs Westwood lack standing to maintain this action, it is unnecessary for us to resolve this question here.

he looked all around but did not observe another parachute. He heard nothing about Col. Sullivan from other POWs during his captivity. Approximately five months following his capture, a North Vietnamese guard advised him that his pilot had died in the wreckage. * * * It is [Captain Francis'] personal opinion that Col. Sullivan did not survive the aircraft shoot down.

Although not specifically alleged by plaintiffs, it is assumed, for purposes of these cross-motions, that during the period June 27, 1972, the date of the crash and placement of Lt. Col. Sullivan in MIA status, to June 22, 1973, the date of the official determination of death, Lt. Col. Sullivan's pay and allowances were credited to his account pursuant to 37 U.S.C. § 552, and regular allotments therefrom were paid to his wife, plaintiff Susan Sullivan, pursuant to 37 U.S.C. § 553.

II

*Standing*

A. *The "Next Friend" Plaintiffs*

Of the eleven named plaintiffs in this action, all but two (plaintiffs Heideman and Sullivan) are parents of servicemen who were the subjects of the challenged determinations of death. These plaintiffs do not purport to characterize themselves as "dependents" of MIAs, as defined by 37 U.S.C. § 551, by alleging that they are "dependent

parents," dependents designated in official records, or persons determined to be dependent by the Secretary concerned or his designee. *See Howell v. United States,* 159 F.Supp. 597, 599, 141 Ct.Cl. 699, 702 (1958); *Mills v. United States,* 124 Ct.Cl. 782, 784 (1953). Nor do they otherwise claim any personal interest in or entitlement to the allotments of pay and allowances provided for the support of such dependents under 37 U.S.C. § 553.

Rather, these nine plaintiffs purport to sue "not to protect their own interests but [to protect] the interests of those absent MIA's" whom they seek to represent solely as "next friends." In support of this novel position, the "next friend" plaintiffs assert that the "next friend" concept is an ancient one; that, as such, they are merely "nominees," while the protected parties are the real parties in interest;[4] and that "it is the need which the protected person has for representation, rather than the fortuitous nature of the proceeding before the Court, that gives rise to 'next friend' standing."

To this conceptual brickwork plaintiffs then add the mortar of legal precedent. They cite *United States ex rel. Sero v. Preiser,* 506 F.2d 1115, 1126 n.8 (2d Cir. 1974), *cert. denied,* 421 U.S. 921, 95 S.Ct. 1587, 43 L.Ed.2d 789 (1975),[5] and *United States ex rel. Bryant v. Houston,* 273 F. 915 (2d Cir. 1921), for the proposition that "next friends" may file habeas corpus petitions on

4. It may be noted that if plaintiffs, as they allege, are not the real parties in interest, then they have failed to meet the pleading requirements of our Rule 61(a), which provides:

"Every action shall be prosecuted in the name of the real party in interest; but an executor, administrator, guardian, trustee of an express trust, receiver, trustee in bankruptcy, or other representative appointed by a judicial tribunal, or a party authorized by statute, may sue in his own name without joining with him the party for whose benefit the action is brought."

Since plaintiffs do not allege that they have been either "appointed by a judicial tribunal" or "authorized by statute" to maintain this suit, they should properly have joined as named parties those absent servicemen who allegedly *are* the real parties in interest: *e. g.,* "Donald E. Crone, a missing person, by his parents and

next friends, Velma L. Crone and Paul E. Crone." *See Fahrner v. Gentzsch,* 355 F.Supp. 349, 350–53 (E.D.Pa.1972); 3A Moore, Federal Practice, ¶ 17.26, at 908 n.21 (2d ed. 1974). This defect in the pleadings, at least in its formal aspect, is of course not fatal. Our Rule 64 provides for adding or dropping parties on such terms as are just. However, such amendments would avail plaintiffs nothing because of our decision that all but plaintiffs Heideman and Sullivan lack standing to sue.

5. It should be noted that in *Sero,* as distinguished from the instant case, the "next friend" plaintiffs were suing *on their own behalf,* as well as on behalf of others, and that the court, moreover, construed the relevant *statute* to authorize such "next friend" representation. There are, of course, even more significant distinctions.

behalf of incarcerated minors, and a host of state cases, for the proposition that "next friends" may litigate the interests of infants and incompetent persons, respectively. Review of these cases here would serve no useful purpose. The principle sought to be invoked by their recitation is fully recognized in Rule 61(c) of the rules of this court, which provides:

> Whenever an infant or incompetent person has a representative, such as a general guardian, committee, conservator, or other like fiduciary, the representative may sue or defend on behalf of the infant or incompetent person. If an infant or incompetent person does not have a duly appointed representative, he may sue by his *next friend or by a guardian ad litem.* [Emphasis added.]

*See Capoeman v. United States,* 440 F.2d 1002, 1004, 194 Ct.Cl. 664, 670 (1971).

■ The obvious, albeit unarticulated, flaw in plaintiffs' argument is the assumed equation of infants and incompetent persons on the one hand with missing or absent persons on the other. Plaintiffs, in effect, would have us construe the term "incompetent persons" in our Rule 61(c) to include missing persons. This is an untenable construction. Fundamental to this court's jurisprudence is the principle that, in every suit, there must be a real party in interest to whose present, personal benefit a money judgment may run. Missing persons do not and cannot meet this requirement. This is so because any judgment running to the benefit of a missing person is, of necessity, speculative, hypothetical, and contingent upon such person's possible survival and reappearance.

■ Plaintiffs attempt to circumvent this obstacle by resort to the language of 37 U.S.C. § 552(a)(1) which provides, in pertinent part, that a serviceman "who is in a missing status, is * * * for the period he is in that status, entitled to receive *or have credited to his account* the same pay and allowances * * * to which he was entitled at the beginning of that period or may thereafter become entitled." [Emphasis added.] The short answer to this argu-

ment is that an "account" is not a real party in interest. A slightly longer answer is that this court has repeatedly recognized the rights of formerly missing servicemen or prisoners of war to recover, *upon their return,* the pay and allowances expressly preserved for them under the Missing Persons Act. 37 U.S.C. § 552; *see Espartero v. United States,* 152 Ct.Cl. 789, 791–92 (1961); *Campbell v. United States,* 149 F.Supp. 199, 202, 137 Ct.Cl. 742, 746 (1957); *Mills v. United States,* 124 Ct.Cl. 782, 784 (1953). Those rights are not extinguished by an erroneous determination of death. 37 U.S.C. § 556(d). No more is due under that Act. To infer more would be, in effect, to provide a remedy without a right and without a proper party to enforce it.

Nor can plaintiffs derive any support from the legislative history of the Missing Persons Act. "[T]he primary purpose of [that Act] was to alleviate financial hardship suffered by the dependents of servicemen reported as missing." *Bell v. United States,* 366 U.S. 393, 408, 81 S.Ct. 1230, 1239, 6 L.Ed.2d 365 (1961); *McDonald v. McLucas,* 371 F.Supp. 831, 833 (S.D.N.Y. 1974) (three-judge court). We can find in that history no evidence, nor have plaintiffs referred us to any, of Congressional intent that persons other than dependents of MIAs, or the MIAs themselves when and if they return, be permitted to assert entitlement to the protection and benefits which that Act confers.

■ The principle is familiar that, "[i]n statutory construction, unless the language is compelling * * * it is well to avoid interpretations no one can believe the Congress could have intended." *Blaha v. United States,* 511 F.2d 1165, 1168, 206 Ct.Cl. 183, 192 (1975); *Anderson v. United States,* 490 F.2d 921, 925, 203 Ct.Cl. 412, 420, *cert. denied,* 419 U.S. 827, 95 S.Ct. 47, 42 L.Ed.2d 52 (1974). Here, neither the language of this otherwise precise and detailed statute, nor the historic circumstances which occasioned its enactment, compel—or even permit—an interpretation consistent with plaintiffs' position. In asking this court to grant a money judgment in the absence,

possibly permanent, of those very parties whose rights are here sought to be vindicated and to whose benefit alone such judgment could run, plaintiffs, in effect, request relief of a declaratory and equitable nature which this court is without authority or jurisdiction to grant. *See Testan v. United States,* 424 U.S. 392, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976); *United States v. King,* 395 U.S. 1, 5, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969); *Austin v. United States,* 206 Ct.Cl. 719, 723, *cert. denied,* 423 U.S. 911, 96 S.Ct. 215, 46 L.Ed.2d 140 (1975). For the foregoing reasons, we hold that the next friend plaintiffs lack standing to maintain this action either on their own behalf or on behalf of the absent servicemen.

### B. *The "Dependent" Plaintiffs*

█ It is undisputed that the remaining plaintiffs, Patricia Heideman and Susan Sullivan, are or were dependents of missing servicemen within the meaning of 37 U.S.C. § 551. As such, the statute clearly entitles them to allotments of pay and allowances for so long as their husbands are carried in MIA status. 37 U.S.C. § 553; *see Mills v. United States,* 124 Ct.Cl. 782 (1953). Each of the "dependent" plaintiffs thus has standing to litigate this action, in an effort to prove that such allotments were unlawfully discontinued (as a result of the putatively unlawful determinations of death), *provided* that such allotments were due and owing in the first instance.

█ Defendant contends that plaintiff Heideman lacks standing because she fails to meet this last proviso. Since M. Sgt. Heideman, according to defendant, was never placed in missing status under 37 U.S.C. § 552, but was the subject of an immediate determination of death, the Missing Persons Act is not involved, and plaintiff Heideman was never entitled to nor ever received the allotments provided thereunder. Thus, defendant argues that plaintiff Heideman lacks standing to challenge the validity of those determinations inasmuch as she has not been deprived of any statutorily or constitutionally protected right, and has not otherwise sustained any judicially cognizable injury in fact.

In response to defendant's contentions, plaintiffs state that:

> We intend to establish that in 1970 Sgt. Heideman became a casualty on a clandestine mission. The helicopter was carrying Thai troops when it crashed. Everyone was rescued except Sgt. Heideman and one other crew member. No one saw either of the missing men die. It was approximately 24 hours before personnel returned to the scene to strip the guns off the helicopter and to search for bodies and for missing persons. The body of the other crewman was found at the site, but there was no sign of Sgt. Heideman. Thus, as to him, a classic MIA situation was presented and under Service Regulations, Sgt. Heideman must have been reported missing. * * *

Plaintiffs have not supported this narrative of events with an affidavit or with documentary evidence challenging the documents attached to defendant's motion for summary judgment. Normally, we would hold that this unsupported narrative is not sufficient to create an issue of fact which must be resolved by a trial. However, plaintiffs correctly assert that their initial efforts to obtain discovery were suspended on defendant's motion pending the court's ruling on legal issues raised by the cross motions for summary judgment.

Thus, we are confronted with a difficult situation in which the issue of plaintiff Heideman's standing to sue is intertwined with the possibility of her right to recover if she can establish her version of the facts. Under all the circumstances, we conclude that this question should be resolved by denying defendant's motion and remanding the claim to the Trial Division, where plaintiff will have an opportunity to engage in discovery of facts which may entitle her to recover. We are persuaded to this view, in part, because none of the facts regarding the fate of M. Sgt. Heideman are in plaintiff's possession with the exception of such information as has been furnished to her by

defendant. *See Schoenbaum v. Firstbrook,* 405 F.2d 215, 218 (2d Cir. 1968), *cert. denied,* 395 U.S. 906, 89 S.Ct. 1747, 23 L.Ed.2d 219 (1969).

## III

### *The Class Action Request*

Since we have concluded that only plaintiffs Heideman and Sullivan have standing, we need not consider plaintiffs' arguments concerning the general class of next friend/next-of-kin members. The sub-class of which plaintiffs here seek certification comprises "over 1,500" dependents and/or designated beneficiaries of MIAs who have, presumably like plaintiffs Heideman and Sullivan, "personally sustained property losses as a result of determinations of death." In support of their request, plaintiffs allege that this sub-class falls within the category of class actions properly maintainable under Rule 23(b)(3) of the Federal Rules of Civil Procedure, and otherwise satisfies the threshold prerequisites set forth in Rule 23(a).

■ At the outset, it may be reiterated that Rule 23 is not binding on this court; that we have not adopted a rule equivalent to Rule 23 and that we have not yet promulgated any general rule governing class actions. Instead, we decided in *Quinault Allottees Ass'n v. United States,* 453 F.2d 1272, 1276, 197 Ct.Cl. 134, 140 (1972), and reaffirmed that decision in *Clincher v. United States,* 499 F.2d 1250, 1252, 205 Ct.Cl. 8, 11 (1974), *cert. denied,* 420 U.S. 991, 95 S.Ct. 1427, 43 L.Ed.2d 672 (1975), to handle class actions on a case-by-case basis until such time as this court's own needs, and the capacity of class action machinery to meet those needs, may be better understood. We did not decide, however, to proceed *in vacuo,* without interest in the experience of other Federal courts, or without responsiveness, where warranted, to the criteria of Rule 23. That, for the present, we regard the "requirements" of Rule 23 as merely "criteria" does not diminish their persuasiveness in appropriate cases. *See Qui-*

*nault Allottees Ass'n v. United States, supra,* 453 F.2d at 1276, 197 Ct.Cl. at 140–41.

■ In the instant case, we have no difficulty in concluding that, under the most liberal of rules or criteria, this suit should not be maintained as a class action. This is so because, as we hold in Part IV of this opinion, the validity of the death determinations is ultimately a factual question which must be resolved, through trial, on an individual basis. This is not a case in which the "common legal issue [here, the constitutionality of 37 U.S.C. §§ 555 and 556] is a predominant one, overriding any separate factual issues affecting the individual members" of the purported class. *Quinault Allottees Ass'n v. United States, supra,* 453 F.2d at 1276, 197 Ct.Cl. at 140 (criterion (iii)); *see Banks v. Travelers Ins. Co.,* 60 F.R.D. 158, 163 (E.D.Pa.1973) (Rule 23(b)(3)).

There are other reasons for denying class action status in this case. Since, absent these obstacles, our result would necessarily be the same, we need only briefly mention them here. First, we simply cannot conclude, despite plaintiffs' vigorous assurances, that "the claims of the present plaintiffs are typical of the claims of the class" or that "the current plaintiffs will fairly and adequately protect the interests of the class without conflict. * * * " *Quinault Allottees Ass'n v. United States, supra,* 453 F.2d at 1276, 197 Ct.Cl. at 140, 141 (criteria (iv) and (vii)); *see Phillips v. Klassen,* 163 U.S.App.D.C. 360, 502 F.2d 362, 367 *cert. denied,* 419 U.S. 996, 95 S.Ct. 309, 42 L.Ed.2d 269 (1974) (Rule 23(a)(3) and (4)). As the three-judge court recognized in *McDonald v. McLucas,* 371 F.Supp. 831, 836 (S.D.N.Y.), *aff'd mem.,* 419 U.S. 987, 95 S.Ct. 297, 42 L.Ed.2d 261 (1974):

> With the repatriation of American prisoners of war which followed the signing of the Paris Peace Accord on January 28, 1973, an emotional breach has occurred among the families of missing servicemen who did not return home. On the one hand, we find families like the plaintiffs who understandably still hope for the re-

turn of their loved ones, and who actively contest any change in a missing status finding. On the other hand, there are those who have accepted the apparent fate of death as to their relatives, and who desperately want the services to make immediate determinations of death so that emotionally and actually they might begin their lives anew.

The anguish of each of these opposing groups has been intense and is reflected in communications to the court.

A second factor militating against class action treatment of the instant case is the fact that, as in *Clincher v. United States, supra,* 499 F.2d at 1253, 205 Ct.Cl. at 12, "test case" resolution of the legal issues common to members of the "dependent" class will provide adequate relief by permitting potential plaintiffs to proceed directly to trial.

Third, since each case must turn on a factual question, there is little likelihood, in contrast to *Quinault,* of the kind of "inconsistent or varying adjudications" which might impair the ability of those similarly situated to protect their interests. *Quinault Allottees Ass'n v. United States, supra,* 197 Ct.Cl. at 141, 453 F.2d at 1276 (criterion (viii)); *see Banks v. Travelers Ins. Co., supra,* 60 F.R.D. at 163 (Rule 23(b)(1)(B)).

Lastly, this does not appear to be a case, as was *Quinault,* where individual claims are "so small that it is doubtful that they would be [otherwise] pursued." *Quinault Allottees Ass'n v. United States, supra,* 453 F.2d at 1276, 197 Ct.Cl. at 140–41 (criterion (vi)); *see Free World Foreign Cars, Inc. v. Alfa Romeo,* 55 F.R.D. 26, 29 (S.D.N.Y.1972) (Rule 23(b)(3)). In sum, because this is a suit wherein individual questions of fact clearly predominate over the common legal issues, the request for class action status is denied.

## IV

### *The Validity of the Death Determinations*

#### A. *The Statutory Scheme*

Plaintiffs challenge the constitutionality of Sections 555 and 556 of Title 37 of the United States Code, under which the Secretary of each military department, or his designee, can [6] where warranted, change the status of a member of the Armed Forces who is officially carried in a missing status to that of killed-in-action.

Briefly, the statute authorizes two alternative means by which the Secretary or his designee may make a determination of death. The first, designated an "official report of death," may be made upon the receipt of "information" which "establishes conclusively the death of a member of a uniformed service." 37 U.S.C. § 556(b). The second, designated a "finding of death," may be made when the Secretary considers that "the information received, or a lapse of time without information establishes a reasonable presumption that a member in a missing status is dead." *Id.* § 556(b).

Section 555 provides for Secretarial review of the status of any missing serviceman no later than 12 months after his placement in missing status. If, upon completion of such review, the serviceman "can reasonably be presumed to be living," the Secretary may then direct continuance of his missing status. *Id.* § 555(a)(1). Otherwise, a "finding of death" may be made, based on the serviceman's absence for a year and the lack of any conclusive information as to his whereabouts. *Id.* § 555(a)(2).

At the time the contested determinations were made, the various services, in practice, had established informal missing persons boards or councils of inquiry to conduct review of a serviceman's status under 37 U.S.C. § 555(a), on the basis of evidence and reports, if any, received from the field.

---

**6.** In 1974, immediately following issuance of the declaratory judgment holding the above statutory procedure unconstitutional, and the permanent injunction prohibiting its continued application in cases where a hearing is requested after notice, each of the military departments either amended its regulations or promulgated new ones in order to satisfy the minimum due process standards required by the decision in *McDonald v. McLucas, supra.*

The Secretary or his designee then reviewed the recommendation of the board and issued the final determination. *McDonald v. McLucas, supra,* 371 F.Supp. at 833.

Plaintiffs challenge this statutory scheme, both on its face and as applied, on two basic grounds:[7] (1) that it failed (at the time the determinations were made) to provide dependents of MIAs, whose allotments could thereby be terminated, with reasonable notice of, and an opportunity to be heard at, appropriate status review proceedings [the notice and hearing ground]; and (2) that it sets forth no standards or criteria, with the result that determinations which were made thereunder are necessarily arbitrary, capricious and unsupported by substantial evidence [the evidentiary ground].

### B. *The McDonald Decision*

In *McDonald v. McLucas,* the three-judge court, addressing similar challenges to the identical statutory scheme involved herein, declared that scheme unconstitutional as violative of the Due Process Clause of the Fifth Amendment, and permanently enjoined any future determinations of death thereunder except in accordance with the procedural safeguards (i. e., prior notice and a hearing on request) announced in the decision. 371 F.Supp. at 836.

Although defendant is concededly bound by the *McDonald* decision, it argues that (1) both the notice and hearing and the evidentiary grounds advanced by plaintiffs were specifically decided by the *McDonald* court, which found only the first of these meritori-

ous; and (2) the *McDonald* holding should be applied only prospectively.

Plaintiffs counter that (1) since the *McDonald* court was not presented with the claims of parties already injured by prior determinations of death,[8] it did not (nor had it need to) specifically address or decide the evidentiary ground; and (2) the *McDonald* holding, insofar as it struck down the statutory scheme at issue on the notice and hearing ground alone, should be applied retroactively.

As to the first question, we agree with plaintiffs that the *McDonald* court neither decided nor addressed the evidentiary ground here advanced for the second time. The initial District Court opinion in the case, in issuing a temporary restraining order and convening the three-judge court, dismissed from the complaint for want of proper parties to espouse it, one of the counts which contained a substantial portion of the evidentiary ground:

> Count three claims that the defendants have acted, and are continuing to act, arbitrarily and capriciously in making findings of death. Whatever remedy may exist to examine such a charge, it is one which is clearly not available to these plaintiffs who represent MIAs as to whom findings of death have not as yet been made.

371 F.Supp. 837, 840 (S.D.N.Y.1973). As for the remaining portions of the evidentiary ground, even cursory reading of the three-judge court's opinion should disclose that it turns solely upon the abrogation of procedural due process (i. e., the notice and hearing ground). Such a reading should likewise reveal the following statement:

> to consider this claim. 28 U.S.C. § 1502; *see Hughes Aircraft Co. v. United States,* 534 F.2d 889, at 902–906 (1976).

**7.** Plaintiffs' petition actually sets forth five separate counts of constitutional challenges, each containing multiple subcounts. In the interest of clarity, and because we find it unnecessary to reach plaintiffs' constitutional challenges as the basis for decision in this case, we simplify their recitation here. For like reasons, we hereafter abbreviate those challenges as "the notice and hearing ground" and "the evidentiary ground" as described above. Plaintiffs also contend that their rights have been abridged under the Vietnam Peace Treaty, 24 T.I.A.S. No. 7542 (Jan. 27, 1973). We lack jurisdiction

**8.** As the three-judge court itself clearly stated:
"[N]one of the named plaintiffs are proper representatives of the group of military personnel who have previously been declared dead under Sections 555 and 556. They could only represent those 'designated next-of-kin' of members who are still missing." 371 F.Supp. at 833.

In view of the court's disposition of the procedural due process attack against Sections 555 and 556, *the additional grounds urged for declaring the sections unconstitutional need not be considered.*

371 F.Supp. at 837. [Emphasis added.]

■ As to the second question, we view plaintiffs' suggestion that *McDonald* be applied retroactively so as to render all prior determinations of death void *ab initio,* as being entirely without merit. We have previously indicated that the *McDonald* court carefully and explicitly refrained from making any pronouncements concerning the rights of interests of persons already adversely affected by prior determinations of death (and consequent discontinuance of allotments), for the reason that none of the named plaintiffs in that action was a proper representative of such persons. 371 F.Supp. at 833; *see* note 8, *supra.*[9] We have also previously discussed, in Part III of this opinion, the *McDonald* court's recognition of the breach which existed between those still hoping for the return of the missing servicemen despite the determinations of death, and those desirous of finality so as to begin their lives anew. Indeed, in an effort to "accommodate the interests of both groups of families without sacrificing the constitutional rights of any individual," the *McDonald* court limited even the prospective effect of its holding, by providing that "any change in procedures which the defendants must make in order to conform with this decision need only be applied to those next-of-kin who demand it after notice." 371 F.Supp. at 836.

We are not aware of a single precedent which would support, under these circumstances, retroactive application of the *McDonald* decision in the manner which plaintiffs urge. There is a corpus of precedent which leads to a contrary conclusion. As the Supreme Court stated in *Chevron Oil Co. v. Huson,* 404 U.S. 97, 107, 92 S.Ct. 349, 355, 30 L.Ed.2d 296 (1971):

" '[W]here a decision of this Court could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the "injustice or hardship" by a holding of nonretroactivity.' "

*See Cipriano v. City of Houma,* 395 U.S. 701, 89 S.Ct. 1897, 23 L.Ed.2d 647 (1969); *Allen v. State Bd. of Elections,* 393 U.S. 544, 89 S.Ct. 817, 22 L.Ed.2d 1 (1969); *Hanover Shoe, Inc. v. United Shoe Mach. Corp.,* 392 U.S. 481, 88 S.Ct. 2224, 20 L.Ed.2d 1231 (1968); *Stovall v. Denno,* 388 U.S. 293, 297, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967); *Simpson v. Union Oil Co.,* 377 U.S. 13, 84 S.Ct. 1051, 12 L.Ed.2d 98 (1964); *England v. State Bd. of Medical Examiners,* 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964); *Chicot County Drainage Dist. v. Baxter State Bank,* 308 U.S. 371, 60 S.Ct. 317, 84 L.Ed. 329 (1940); *Brown v. United States,* 508 F.2d 618 (3d Cir. 1974), *cert. denied,* 422 U.S. 1027, 95 S.Ct. 2621, 45 L.Ed.2d 684 (1975). Therefore, we decline to hold that all previous determinations of death were void *ab initio.*

■ With respect to plaintiffs' second ground for contesting the subject determinations of death, that they were effected arbitrarily and capriciously, and without substantial evidence, we dismiss out of hand defendant's suggestion that the determinations were expressly intended, and consistently held by this court to be nonreviewable and conclusive. Defendant's precedents directly rebut this contention. In *Espartero v. United States,* 152 Ct.Cl. 789, 791–92 (1961), the court stated:

We have held that Section 9 [of the Missing Persons Act] prevents this court from reviewing a determination under this Act *unless it is shown that such determination was arbitrary or capricious.* [Emphasis added.]

To similar effect are *Alpuerto v. United States,* 152 Ct.Cl. 270, 271 (1961), and *Moreno v. United States,* 93 F.Supp. 607, 610, 118

---

**9.** Plaintiffs in fact conceded this much in contending that the *McDonald* holding was limited to the notice and hearing issue. In this regard, their arguments are inherently self-contradictory.

888

Ct.Cl. 30, 43–44 (1950), *cert. denied,* 342 U.S. 814, 72 S.Ct. 29, 96 L.Ed. 616 (1951).

No discourse is required here to perceive the difference between those administrative determinations which are non-reviewable and those which are reviewable by the application of the arbitrary and capricious standard. It is well-established that under this standard, we may review a determination to see whether it is supported by substantial evidence. Nor, in military pay cases, is this review necessarily limited to the administrative record. In appropriate situations, we have decided that a claimant is entitled as a matter of right to a de novo trial on the disputed issues of fact. *See Bray v. United States,* 515 F.2d 1383, 1390–91, 207 Ct.Cl. 60, 73–74 (1975); *Montilla v. United States,* 457 F.2d 978, 983, 198 Ct.Cl. 48, 57 (1972); *Brown v. United States,* 396 F.2d 989, 991–1000, 184 Ct.Cl. 501, 503–19 (1968). This is such a case, and, therefore, we hold that plaintiffs Heideman and Sullivan are entitled to a de novo trial on the validity of the subject death determinations under the standards of review articulated in the cases just cited.

### Conclusion

Accordingly, it is ordered that defendant's motion for summary judgment is granted and the petition is dismissed as to all plaintiffs except Patricia Heideman and Susan Sullivan; that plaintiffs' motion for summary judgment is denied; and that the claims of Patricia Heideman and Susan Sullivan are remanded to the Trial Division for further proceedings in accordance with this opinion.